MERCANTILE BANK AND TRUST
COMPANY, Appellant,

v.

Peter I. VILKINS, Respondent.

No. WD 36855.

Missouri Court of Appeals,
Western District.

April 15, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 22, 1986.

Application to Transfer Denied
July 15, 1986.

William G. Beck, Kansas City, for appellant; Field, Gentry, Benjamin & Robertson, of counsel.

James M. Tobin, Kansas City, for respondent; Murphy & Tobin, of counsel.

Before PRITCHARD, P.J., and SHANGLER, J., and CONLEY, Special Judge.

PRITCHARD, Presiding Judge.

This is the second appeal by appellant in which it sought to recover costs of collection including reasonable attorney fees in the amount of $197.29. See *Mercantile Bank and Trust Company v. Vilkins*, 675 S.W.2d 673 (Mo.App.1984). Trial of the present case was to a jury which returned a verdict for respondent, judgment being entered thereon.

On January 5, 1982, appellant filed suit against respondent on his $33,000 installment promissory note, praying for judgment of the principal balance, accrued interest, and costs of collection, including attorney's fees, the latter being a provision of the note. The facts stated in the first opinion are that respondent maker paid off the note, but the facts here indicate that respondent gave his attorney two checks for insurance proceeds and a small amount of cash to pay the note balance and interest. His attorney took the checks and cash to appellant's attorney telling him that respondent would pay the principal balance and interest, but not any costs of collection or attorney's fees. Appellant's attorney took the checks and cash to its banking offices on March 4, 1982, and either gave them to a bank officer or took them to the "commercial loan cage". Because of an improper endorsement, the checks could not be processed for four days, and on March 8, 1982, the checks and cash were applied to the note for principal and interest, reducing the balance to zero. This stamp was placed on the face of the note: "Mar 8 1982 PAID MERCANTILE BANK AND TRUST COMPANY KANSAS CITY MO." The note marked "paid" was delivered by mail to respondent's attorney, but it was later redelivered to appellant's counsel, and was admitted into evidence as Plaintiff's Exhibit 1.

Faced with the fact that the note was marked "paid" and delivered to respondent's attorney, appellant undertook to prove that there was a mistake or error in marking it paid and delivering the instrument to respondent's attorney, i.e. that there was no intent to discharge respondent from his liability for payment of collection costs and a reasonable attorney's fee. William Green was appellant's Vice President in the Commercial Loan Department at the time respondent's installment loan was accelerated, but he had left the bank at the time the note was stamped "paid". He had no idea how the "paid" mark got on the note. Suzanne Dimmel Glass, who was the officer in charge of Credit Review at the time, did not see the note being stamped "paid", did not know who stamped it, or what instructions they might have had. She testified that the stamp was affixed by mistake or error, but the note is returned to the borrower when the amounts are paid in full. The minutes of the meeting of appellant's Board of Directors on March 9, 1982, recite that respondent's loan was "paid in full on 3/5/82".

For appellant, Instruction No. 6 was given: "Your verdict must be for plaintiff if you believe: First, plaintiff took legal action to collect the $33,000.00 promissory note; and Second, plaintiff thereby incurred costs of collection, including reasonable attorney's fees, unless you believe plaintiff is not entitled to recover by reason of Instruction No. 7."

Instruction No. 7, which appellant contends was erroneously given, is: "Your verdict must be for defendant if you believe: Plaintiff, in stamping the note 'paid,' accepted payment of all principal and accrued interest in full payment and dis-

charge of all obligations of defendant under the promissory note, including 'costs of collection' and 'reasonable attorney's fees.'"

■ In *L.E. Lines Music Co. v. Brittell*, 30 S.W.2d 781[1] (Mo.App.1930), it was held that where a maker is in possession of a note marked "paid", a presumption of payment is raised, but "this was not an absolute presumption, but one which might be rebutted by showing a mistake of fact, or that the delivery of the note and indorsement thereon was made without authority." See also the cases involving "paid" stamps on promissory notes: *Household Finance Co., Inc. v. Watson*, 522 S.W.2d 111 (Mo.App.1975); and *Pentagon Federal Credit Union v. Edwards*, 571 S.W.2d 679 (Mo.App.1978). Appellant procurred the note from respondent's attorney, had it admitted into evidence, then proceeded with evidence for the purpose of rebutting the presumption of payment arising from its being marked "paid" and its delivery to respondent's attorney. Appellant was entitled to present its case in that manner, but the result is stated in *JD v. MD*, 453 S.W.2d 661, 663[4, 5] (Mo.App.1970), to be: "When a rebuttable presumption arises, the person against whom the presumption operates is confronted with a rule of law which casts upon him the burden of producing substantial evidence to controvert the presumed fact [*Terminal Warehouses of St. Joseph, Inc. v. Reiners, Mo.*, 371 S.W.2d 311, 316(4)] (Mo.1963), and upon the introduction of such substantial evidence, the existence or nonexistence of the fact once presumed is to be determined from the evidence as if no presumption had ever been operative in the case." See also the there footnoted cases of *Duff v. St. Louis Mining & Milling Corp.*, 363 Mo. 944, 255 S.W.2d 792, 793–794[1] (Mo. banc 1953); *State v. Brown*, 446 S.W.2d 498, 500[4] (Mo.App.1969); and *Campbell v. Fry*, 439 S.W.2d 545, 548[1] (Mo.App.1969).

■ Because appellant introduced evidence to rebut the presumption of payment which was initially in the case, the presumption was no longer existent as evidence. The underlying facts that the note was marked "paid" and delivered to respondent's attorney, were, however, still in the case as was appellant's evidence from Ms. Glass that the "paid" stamp was affixed by mistake or error. That conclusionary testimony was the only indication that the stamp was placed on the note through mistake or error, "but the note is returned to the borrower when the amounts are paid in full." Ms. Glass further testified that she did not see the note being stamped "paid", she did not know who stamped it, or what instructions that person might have had. The minutes of appellant's board meeting recite that respondent's loan was paid in full on 3/5/82.

Atop of the foregoing evidence is the testimony of appellant's counsel, Mr. Beck, who testified for it on direct examination: He was first contacted by appellant on September 17 or 18, 1981, to contact Insurance Company of North America, on a claim for loss of a 1979 Kenworth tractor, which secured the note. Apparently, other claims were pending against the insurance company, and about December 21, 1981, Mr. Beck felt it was necessary to take legal action against respondent, so a petition was filed, answer was filed, and for appellant a motion for summary judgment was filed. Before the time to respond to the latter motion, respondent's then attorney, Mr. David Taylor, came to Mr. Beck's office and presented two checks (and a small amount of cash) for payment of the principal and interest on the note, saying that he would not pay and refused to pay any costs of collection or attorney fees in the case. On cross-examination of Mr. Beck, as here pertinent, his testimony was that when he arrived at the bank on March 4, 1982, with the two checks and a small amount of cash, he either went to the Commercial Loan cage or gave Ms. Glass the checks to take to it. At the time, he talked to Ms. Glass and Mr. John Mier, expressing some happiness that the principal and interest on the loan had been received, and he probably took the checks and cash to the loan cage.

Mr. Back was confronted with his deposition: "Q. Now, when you went to that loan cage that day, do you remember requesting that the note be stamped 'Paid' and returned to you so that you could sent (sic) it to Mr. Taylor? Isn't that a fact? A. I said that in my deposition; and I don't believe that it is a fact. I'm sure—Q. Let me make sure we understand this. Do you remember giving the rest of this answer: 'and gave them to a teller at what is called the installment loan cage where installment loan payments are made, or I think it is the commercial loan cage rather than the installment loan cage. I requested that a receipt be prepared for the cash and that at such time as the checks cleared, the note be stamped paid and returned to me so that I could send it to you for delivery to your client. I obtained the receipt. I had a brief discussion, I think, with both Suzanne Glass and with John Mier, perhaps two separate discussions. We were all pleased to see that the principal and interest due on the promissory note had been paid and I carried the receipt for the $15.37 back to my office.' Is it your testimony that you did not give that answer? A. Not at all. Q. Your testimony is that you gave that answer? A. I don't remember; but it's in the transcript. I'm sure I gave the answer; I believe that I testified incorrectly at the time that I gave this deposition. No one had made a—[Objection, and court ruling that the witness may explain his answer.] At the time that the deposition was given no one was claiming that by stamping the note 'Paid' that it was giving up the Bank's rights of costs of collection and attorney's fees. The first time I heard of that was in February of 1983, which was long after that; and I, frankly, I'm sure I didn't give it very much thought during the deposition." Mr. Beck did not undertake to correct the foregoing depositional answers, although about 45 other corrections were made. On further cross-examination, he acknowledged that he was being paid to advise the bank as its lawyer on March 4, 1982, and he expected the bank to take his advice on that date.

■ Under *Rowe v. Farmers Insurance Company, Inc.*, 699 S.W.2d 423, 425, et seq. (Mo. banc 1985), the prior inconsistent depositional statements of Mr. Beck, although made under oath, as to how the note became marked "paid", could be used substantively and considered by the jury on the issue of mistake or error. It tends to refute the claim that it was marked paid and delivered through error or mistake.

■ Instruction No. 7, supra, was not erroneously given. The clause therein, "accepted payment of all principal and accrued interest in full payment and discharge of all obligations * * * *" properly told the jury that it could find an intent so to discharge the obligations by the act of marking it paid. According to Black's Law Dictionary, Fifth Edition, p. 12, "accept" means "To receive with approval or satisfaction; to receive with intent to retain. * * Admit and agree to; accede to or consent to; receive with approval; adopt; agree to. * * * Means something more than to receive, meaning to adopt, to agree to carry out provisions, to keep and retain." Further, as to discharge of parties to commercial paper is the UCC, setting forth the statutory law as to discharge of parties: Section 400.3–601(1), RSMo 1978 provides: "The extent of the discharge of any party from liability on an instrument is governed by the sections on (a) payment or satisfaction (section 400.3–603); or * * * (c) cancellation or renunciation (section 400.3–605); * * *." Of course, the evidence shows payment of all principal and accrued interest by respondent. The note was marked "paid" and delivered to his attorney. Section 400.3–605 provides "(1) The holder of an instrument may even without consideration discharge any party (a) in any manner apparent on the face of the instrument or the indorsement, as by intentionally cancelling the instrument * * * (2) Neither cancellation nor renunciation without surrender of the instrument affects the title thereto."

■ It was unnecessary for respondent to converse appellant's verdict director by submitting issues to the jury that an autho-

rized agent of appellant marked the note "paid" intending to discharge appellant, and that it was not done by mistake. By use of the words "accepted payment", Instruction No. 7 submits the issue of intent and that necessarily implies that there was no mistake or error in affixing the paid stamp. The jury could find the lack of mistake or error, and the intent to deliver the instrument to maker's attorney, if it believed the deposition testimony of Mr. Beck, and the evidence that the Board minutes showed the note paid in full. Point I, raising the issue of the propriety of giving Instruction No. 7 is overruled.

 On voir dire examination, appellant's counsel asked the panel if any member had been a plaintiff or defendant in a civil case. Venireperson Serrone held up his hand and stated: "I had to take legal action against a company that I hired to put siding on my house, they didn't finish the job and it was settled out of court. MR. BECK: Has that been some years? VENIREPERSON SERRONE: Yes." No further questions were asked. In its motion for new trial, appellant alleged that Serrone "intentionally concealed his previous experience as a defendant in a lawsuit upon a contract." That allegation is carried forward in Point II here. It appears that on January 14, 1980, suit was filed against Serrone and others by Springfield Better Homes, Inc., asking $5,500 damages and interest and a mechanics' lien. Serrone filed a denial of the allegations of the petition, and further pleaded that the alleged work set out in the petition "was not done in a workmanlike manner and it was faulty in all respects and that the plaintiff thereby breached said contract, if any, for the failure to perform their work as represented by them." It may well have been that Serrone thought this answer and affirmative pleading was a taking of a legal action against a company. He did answer up to the question. No intentional concealment of the matter is in evidence. In *Anderson v. Burlington Northern Railroad Co.*, 651 S.W.2d 176 (Mo.App.1983), the venireperson, Krus, remained mute when the panel was asked about lawsuits and claims for bodily injury to themselves or members, when in fact his brother had sustained facial injuries in an automobile accident. Neither that case nor the numerous others cited in the opinion descend to innocuous status of the question here and Serrone's answer. So also in *Frenette v. Clarkchester Corp.*, 692 S.W.2d 834 (Mo. App.1985), where two venirepersons remained silent when the panel was asked about previous involvement in claims for personal injuries, when in fact, both had been so involved. Point II is overruled.

The judgment is affirmed.

All concur.