**Janice E. HARDING, Respondent,**

v.

**James L. HARDING, Appellant.**

**No. WD 44549.**

Missouri Court of Appeals,
Western District.

March 17, 1992.

Scott W. Ross, Maryville, for appellant.

Roger Martin Prokes, Maryville, for respondent.

Before LOWENSTEIN, C.J., and SHANGLER and TURNAGE, JJ.

LOWENSTEIN, Chief Judge.

The husband, Jamie Harding, appeals from a divorce decree ordering an even division of marital property and from the Form 14 child support figure of $520 a month to the wife with custody of the two minor children.

## The facts

Jamie and Janice were married in 1980, and two children were born of the marriage who are now five and three. Janice and Jamie began sleeping in separate bedrooms in October, 1989, and Janice moved from the home in February, 1990. Janice has an annual salary of $21,372 as a school librarian. Jamie has an annual salary of $10,585 from two part time jobs at hourly wages, and also spends about 40 hours a month raising cattle. The parties started the cattle operation in 1982, on land rented from Jamie's father, and built their herd to 73 cows by holding back heifers until 1985 or 1986. The court found Jamie's farm income to be $16,000 a year. The farming income per year was:

```
1987  –  $  1,212.00
1988  –  $  4,200.00
1989  –  $ 15,200.00
1990  –  $ 16,000.00 (expected)
```

Jamie's total income was then $26,585 per year, or $2,215 a month.

Neither party appears blameless in the failure of the marriage, as shown by the record and stated in the trial court's decree. The major incident important to this appeal, however, is Janice's third pregnancy. In her verified petition for divorce signed on January 31, 1990, Janice alleged that she was currently pregnant with the parties' third child, with the birth estimated to occur on July 9, 1990. On April 23, 1990, Janice answered interrogatories, stating that she had never engaged in sexual intercourse with anyone other than Jamie during the marriage. The child was born on June 30, 1990, and in August, 1990, a blood test showed Jamie was not the father. Janice then admitted to having sexual intercourse with a stranger in September of 1989, just before the parties ended marital relations. The trial court credited Jamie with the cost of the blood test in the award of marital property to Janice.

During trial, Janice submitted an itemized expense statement showing the cost to support the two children born of the marriage to be $628 per month. She also testified on the stand that her figures were correct, and that in fact, the $105/mo. day care cost would decrease when the older child entered Kindergarten. Based on the total monthly salaries found by the trial court, it ordered Jamie to shoulder 55% of the financial burden of raising the two children. Using the Form 14 presumed child support amount of $826, plus $105/mo. day care, the court then ordered $520/mo. child support.

## Division of Property

It is within the court's discretion to divide the marital property on the basis of marital misconduct, *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 64 (Mo. banc 1983); *Moseley v. Moseley*, 642 S.W.2d 953, 959 (Mo.App.1982) (trial court is to consider and apply the relevant factors in dividing marital property); § 452.330.1, RSMo 1986. The trial court in this case specifically stated in the divorce decree that the parties were equally blameworthy in the disintegration of the marriage, and split the marital property equally, awarding Janice $26,558 as her share of the farming operation. The court also stated that the post-separation misconduct of Janice, in concealing the paternity of her third child, did not affect the property division. The evidence of the concealment was before the trial court, the court awarded Jamie the cost of proving parentage, and there is no abuse of discretion in the trial court's division of property. In his brief, Jamie impliedly asks for legal expenses in uncovering the deception, yet no request was made of the trial court, and the point is not preserved for review, *Bates*

*v. Bates,* 761 S.W.2d 186, 189 (Mo.App. 1988).

### Calculation of Child Support

■ Jamie argues three points relating to the calculation of child support. First, he argues that the trial court must take into account the monthly interest expense on the $26,558 he must borrow to pay Janice for her half interest in the farming operation, reducing his monthly income below $2,215. The trial court has discretion to divide marital property, *Colabianchi* at 64, and when the economics are such that lump sums are impractical, the court can order installments to be made by one spouse to the other, *Levesque v. Levesque,* 773 S.W.2d 220, 223 (Mo.App.1989), *Goller v. Goller,* 758 S.W.2d 505, 508 (Mo.App. 1988), and the appellate court may, upon finding error, enter the property division order the trial court should have, *Turley v. Turley,* 640 S.W.2d 473, 475 (Mo.App.1982). The trial court did not specifically order a lump sum payment, and Jamie points to no authority for the proposition that his alleged interest expense must be subtracted from his monthly income in order to calculate child support. The point is denied.

■ Second, Jamie argues that the court incorrectly used $105 as the amount of monthly daycare cost for the children, since the older child is entering Kindergarten, and the daycare cost will apparently decrease by $82.50/mo. according to Janice's testimony. However, the trial court is entitled to use the figure that was currently being spent by Janice on daycare, and any changes in circumstances are relegated to the modification process, *Morovitz v. Morovitz,* 778 S.W.2d 369, 371 (Mo.App.1989), § 452.370, RSMo 1986 (modification based on substantial and continuing change of circumstances rendering terms unreasonable).

■ Third, Jamie argues that his annual income from the farming operation was exaggerated, and that the trial court should have found an income of $8,500, from an average of the four years' income. However, as the court noted, the lower income from the farming operation in earlier years was due to increasing the herd size. The court did not err in relying upon recent income tax figures showing approximately $16,000 income for 1989 and 1990, upon evidence showing the herd was now built up, and upon Jamie's statement that he "hoped" to net $16,000 from the cattle each year. There was also evidence, based on variations in the farming economy, of more than $16,000 per year future earnings. Given a continuing change in profitability from the cattle, Jamie has the remedy of a modification of the amount of child support, *Morovitz,* at 371, § 452.370. All points relating to calculation of child support based on Jamie's disposable income and upon daycare costs are denied.

### The children's needs

Jamie's most important point is that Janice testified that the children's needs were satisfied by $628 a month. In contrast, the Missouri Presumed Child Support Guidelines found in Form 14, and presumed correct under Rule 88.01, would point to a monthly figure of $931, which was presumably used by the trial court to reach Jamie's monthly child support obligation of $520. The question presented to this court is whether the Rule 88.01 "presumptive figure" may be rebutted by the custodial parent's testimony of lower actual monthly expenses, and if so, is the custodial parent then locked into the figure testified to in court? Rule 88.01 states that:

When determining the amount of child support to order, a court or administrative agency shall consider all relevant factors, including:

(a) the financial resources and needs of the child;

(b) the financial resources and needs of the parents;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved;

(d) the physical and emotional condition of the child; and

(e) the educational needs of the child. There is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form 14 is

the amount of child support ... It is sufficient in a particular case to rebut the presumption ... if the court or administrative agency enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate. (Emphasis added.)

Three cases appear relevant to the inquiry. The most recent is *Allen v. Allen*, 811 S.W.2d 58, 59 (Mo.App.1991), where a Form 14 calculation of child support resulted in monthly needs of $734, while the custodial mother's evidence of need was $725. The trial court had in fact awarded $250 a month, well below the amount calculated using either monthly need. The *Allen* court held first that an express finding that the Form 14 amount was inappropriate was required, and second that the mother had rebutted the Form 14 presumption dictated by Rule 88.01, by introducing evidence of less need. The court reversed with directions to follow the Form 14 calculated *percentage*, but using the *need* introduced by the mother. Two other cases, decided before Rule 88.01 was applicable, are *Hendrix v. Hendrix*, 801 S.W.2d 501 (Mo.App. 1990), and *Heins v. Heins*, 783 S.W.2d 481 (Mo.App.1990). In *Hendrix*, the trial court ordered $630 a month child support, while the wife testified to $350 a month in needs, *id.* at 503. The court reversed, citing the wife's evidence of need and the husband's income as supporting a ruling that the $630 a month was an abuse of discretion, *id.* In contrast, the *Heins* court relied solely on the wife's evidence of need to reverse an $800 per month child support/maintenance award. The wife had testified to $503 per month in needs for both her and the children, and the court in reversing stated that "support payments must be limited to the demonstrable needs of the party receiving support and not to provide an accumulation of capital," *id.* at 483. The *Heins* court felt that the trial court had abused its discretion in awarding support to exceed the demonstrated requirements, *id.* The cases of *Hendrix* and *Heins* show the logical basis for not ordering more support than a parent demonstrates a need for,

while *Allen* shows that such a demonstrated need in effect rebuts the presumption of need found in Form 14 and enforced by Rule 88.01.

Rule 88.01 set up a rebuttable presumption in this case that $826 per month was the correct amount needed to care for the two minor children of Jamie and Janice Harding. However, Janice testified to a total need of $628 per month, and so rebutted the presumption. This court holds that when a custodial parent gives evidence as to the children's financial needs under that parent's care, the presumed amount of child support amount under Form 14 has been rebutted. When a party introduces evidence controverting a presumed fact, the fact must then be determined from the evidence in the case as if no presumption had ever been in operation, *Mercantile Bank & Trust Co. v. Vilkins*, 712 S.W.2d 1, 3 (Mo.App.1986). The evidence before the trial court of the ultimate fact, *i.e.* the monthly need of the minor children, must here be determined by looking at Janice's testimony as to need, and any other relevant evidence. The court was not locked into the need testified to by Janice, but where a $300 difference between the Form 14 amount and Janice's testimony exists, the court has abused its discretion in awarding the higher figure without citing factors to support such a difference in actual need and awarded support. This is not at odds with Rule 88.01. As Rule 88.01 states, a court must enter a written or specific finding on the record that the Form 14 amount is unjust or inappropriate. When a custodial parent offers evidence rebutting the Form 14 presumption, the trial court must enter a written finding, whether requested or not, which includes the actual numbers used in calculating the non-Form 14 child support, as well as the factors which made the Form 14 amount inappropriate. This is fair to the parties, and aids the appellate court in review of child support awards.

Jamie's point on appeal is sustained, and the cause remanded to the trial court to reconsider and award a reasonable amount of child support, considering Janice's dem-

onstrated need, and the other relevant factors in determining child support, Rule 88.01. Unlike *Heins v. Heins,* 783 S.W.2d at 483, this court will not require the trial court to enter an order of not more than Jamie's fair share of the $628 per month need, since the trial court should be allowed the discretion to take into consideration other factors, such as Janice's testimony that the children's standard of living has declined since the separation, and her testimony that the $628 per month need is based upon her expenses since the separation, and so may reflect an overly tight budget. Rule 88.01 is relatively new, but its purpose is clear: to prevent the custodial parent and the children of the marriage from being short-changed on child support from a non-custodial parent with the ability to pay. As Jamie points out, however, the cost of raising children in Missouri may differ from place to place, or from family to family. Therefore, evidence of need lower than the presumed amount will rebut the Form 14 presumption, but will not mandate that the lower figure be applied. The trial court still has the discretion to award a just amount based on all the considerations of Rule 88.01.

The cause is affirmed on the points of the calculation of child support based on Jamie's income, debt-service, and day care, and on the point of the division of marital property, but reversed and remanded regarding the actual order of $520 per month child support, to allow the trial court to enter an order consistent with the true needs of the minor children.