Linda STRUEBY, Respondent,

v.

Greg STRUEBY, Appellant.

No. WD 48152.

Missouri Court of Appeals,
Western District.

March 1, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 3, 1994.

Application to Transfer Denied
June 21, 1994.

Janet Wake Larison, Stephens, Drake & Larison, Grant City, for respondent.

Roger M. Prokes, Strong, Strong & Prokes, Maryville, for appellant.

Before SMART, P.J., and LOWENSTEIN and FENNER, JJ.

LOWENSTEIN, Judge.

The appellant, Greg Strueby (Greg), raises three points on this appeal from the trial court's order following his ex-wife, Linda

May 28, 1993, at the rate of 13% per annum, simple interest.

Strueby's (Linda), motion to modify their dissolution of marriage decree with regard to custody and visitation as well as child support. The respondent's motion prayed: 1) the provisions of the decree which granted joint custody and primary physical custody to Linda Strueby, be modified with a reduction of Appellant's visitation, and 2) due to a change of circumstances, the ordered child support was twenty percent less than the presumed amount. The trial court granted Linda relief, forming the appellant's first two points on appeal. The court's failure to cite Linda for contempt for her failure to deliver to Greg pictures and an insurance policy, gave rise to the third point on appeal. The pertinent facts will be recited in each point.

## I.

The decree, entered less than a year before this modification motion was filed, approved the parties' separation agreement for joint custody with primary physical custody to the mother of the three boys (then ages 9, 11, and 13). Greg's visitation would include three weekends per month, Christmas vacation, and five enumerated holidays. Also, for the entire summer, Greg was to have custody with one week going with the mother, except on those evenings when his employment kept him away from home.

The motion to modify stated Greg had "continually harassed" the children about who they wanted to live with, and that the children did not want visitation with their father except on weekends.

The evidence favorable to the judgment which changed the joint custody arrangement and reduced Greg's visitation included the testimony of the boys' school guidance counselor. The counselor said all three boys were very good students. Two of the boys had told the counselor that after the dissolution "... they're still being asked an awful lot of questions about what's going on in the home ..." (by the father), and "they don't feel comfortable answering." The appellant would ask the boys about who their mother was dating, and the boys were very upset by the questioning. According to the counselor, the father was also putting an undue amount of pressure on the boys relative to their academic and athletic performances. The counselor advised the appellant not to use the children to gather information about their mother. He testified that at least one of the children had started showing emotional problems, and all three of them expressed frustration because the situation did not seem to change. The boys were beginning to experience problems in school. The counselor talked to Appellant on several occasions about these matters and, although Greg seemed receptive, his conduct has not changed.

A witness who knew both the parties, and remained friends with Linda, testified the boys told her they were left alone too much during the summer and felt excessive pressure from their father. She also said the boys resented the appellant's suggesting they were responsible for getting their parents back together. The witness stated the oldest son (the thirteen year old), was particularly disturbed about having to take care of his brothers especially during the summer when the father worked.

Greg testified at length. In modifying the joint custody and visitation of the original decree, the court noted the appellant "... could not make a statement without laying blame on the mother ... it ran throughout everything he said." The court was upset with the children being left alone: "Certainly it was not thought by the court that the boys would be staying in a trailer house a quarter of a mile from any place by themselves all day long." The order reflected the fact the children no longer wanted to be with their father for more than a weekend visit. The order changed the custody situation to allow Greg reasonable rights of visitation including alternate weekends, certain holidays and extended times in the summer.

■ In his point relied on, Greg argues error in terminating joint custody and reducing his visitation as not being in the best interest of the boys and being against public policy. Suffice it to say, the evidence supported the change, albeit that the appellant means well and is attempting to be a good parent. As to the public policy argument, § 452.375, RSMo Cum.Supp.1993, which cov-

ers joint custody, recommends the encouragement of joint decision making. This statute does not deter the trial court from doing as it here ordered, so long as the order could be supported by sufficient evidence showing the change was in the best interest of the children.

■ Appellant further contends the language in § 452.400.2 which states a court may modify a decree as to visitation to serve the best interests of the child, "... but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development," was not supported by the evidence. He contends, that at best, his behavior "put stress on the boys." This court, in *Winters v. Winters,* 617 S.W.2d 585, 591 (Mo.App.1981) said the statute did not affect the situation, where as here, "there was no entire restriction of appellant's visitation rights. There was just a reduction of the same and, thus, there was no requirement to make the foregoing findings" (as to physical endangerment or impairment of emotional development). The *Winters* rationale has been affirmed *In re Marriage of Amos,* 843 S.W.2d 946, 953 (Mo.App.1992), and *Andrews v. Carsel,* 847 S.W.2d 174, 175 (Mo.App.1993). The point is denied.

## II.

■ The decree entered on dissolution rendered a total of $400 per month in child support. After the evidence on the modification motion, the court, based on the Form 14 figures showing the mother with $396 in monthly income and the father with $4994 per month, arrived at the figure of $288 a month for each of the three children, $864 total. Greg candidly admits the court could have entered support at a total between $476 and $601, rather than the amount of $864. He alleges, based on *Harding v. Harding,* 826 S.W.2d 404 (Mo.App.1992), the $864 figure represents an abuse of trial court discretion because Linda's evidence showed she needed less than the presumed amount. In *Harding,* the custodial parent at trial submitted an itemized statement, bolstered by her testimony as to correctness, showing the costs related to the children well below the

Rule 88.01 presumed amount. This court in *Harding* said such evidence rebutted the presumed total under Form 14. Here, the custodial parent penciled out estimated expenses for a two month period. Several of the entries were accompanied by question marks. The trial court determined this exhibit did not rebut the presumed amount. The court here specifically questioned Linda about her total grocery expenditures for a month for boys ages 10, 12, and 14 in a total amount of $52.53. The court determined the exhibit did not reflect an accurate picture of the expenses related to child care. The exhibit in the case at bar does not include amounts for housing and other essential items. Therefore, under the language in *Andrews v. Carsel,* 847 S.W.2d at 175, Appellant did not carry the burden of showing an abuse of discretion in the court's child support award. Neither the evidence in the exhibit nor Linda's testimony rebut the presumed amount, and the point is denied.

■■ The final point on appeal is perhaps the most troubling. In their Separation Agreement approved at dissolution, Linda agreed to return certain pictures to Greg, along with all insurance policies. The picture issue seems to have been resolved, but even as of the date of submission here, Linda had not returned a $1000 policy to Greg. She had, in fact, cashed in the policy. Greg asked for, but did not receive, a finding of civil contempt on the part of his ex-wife. He readily admits such a motion is left to the sound discretion of the trial court, and review of the judgment will not be disturbed absent a showing of a clear abuse of discretion. *Mayfield v. Mayfield,* 780 S.W.2d 139, 144 (Mo.App.1989). Linda testified she did not give Greg the policy because it belonged to her and she was the owner; however, she gave him those policies which belonged to him. She canceled the policy in question and put the cash value in a savings account. She then purchased a new insurance policy.

Although the court does not condone Linda's actions, it will not overturn the trial court's failure to grant the motion. *Camp-*

*bell v. Campbell,* 825 S.W.2d 319 (Mo.App. 1992).

The judgment is affirmed.

All concur.