**D'Nita ELLIOTT, Respondent,**

v.

**Timothy J. ELLIOTT, Appellant.**

**No. WD 51248.**

Missouri Court of Appeals,
Western District.

March 12, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 30, 1996.

Frank E. Brown, Kansas City, for Appellant.

John Lawrence Williams, Kansas City, for Respondent.

Before ULRICH, P.J., and BRECKENRIDGE and SMITH, JJ.

SMITH, Judge.

Appellant appeals from a judgment modifying a dissolution decree increasing his child support obligation for the parties' minor child, Autumn. He asserts three points on appeal: (1) the trial court erred by including "extraordinary expenses" for private elementary school, dance lessons, and piano lessons in its Form 14 calculation, (2) the trial court erred in that it failed to consider the reduction in expenses incurred by respondent for Autumn resulting from the 4.5 year voluntary cohabitation between respondent and Charles Williams in its Rule 88.01 analysis, and (3) the trial court erred in incorrectly computing the Form 14 amount, failing to rebut the Form 14 amount, and failing to do a Rule 88.01 "analysis" in computing child support.

### FACTS

The parties' marriage was dissolved on July 29, 1987. Respondent was awarded the care, custody and control of the parties' minor child, Autumn C. Elliott, born on November 20, 1985. Pursuant to the Court's Decree of Dissolution of Marriage, appellant was ordered to pay respondent the sum of $186 per month in child support. On March 10, 1994, respondent filed a Motion to Modify Decree of Dissolution requesting an increase in child support. In support of her request of increased child support, respondent alleged that there were continuing and substantial changed circumstances since the date of dissolution. She specifically alleged: a) that the financial circumstances of the parties would result in a change in child support from the existing amount by 20% or more; and, b) since the time of the original decree, the child's needs for education, social and sustenance had increased. The modification hearing was held on March 24, 1995, before the Honorable Judge Anthony P. Nugent, Jr. Judge Nugent entered his order on May 24, 1995, increasing child support payable to respondent to $523.34.

Respondent's gross income has increased to $26,526 per year from $12,000 at the time of dissolution. Respondent earns $23.00 per month net income from a rental house and in 1994 she received $600 from part ownership of Texas real estate. Appellant's gross income increased from $16,000 per year at dissolution to $24,900.64 per year at time of the hearing. Appellant's pay stubs indicate that his gross monthly income is $2,073.07. Appellant included $143 for the care and support of his mother in his income and expense statement which the court specifically rejected.

Since 1992 respondent has resided with Charles E. Williams. The trial court found that respondent derives no income from this 4.5 year cohabitational relationship, and that in fact, financially the relationship costs respondent $340.00 per month which she pays to Mr. Williams for rent. Respondent's Income and Expense Statement showed her total average monthly expenses at $1,364. This included $240 per month for Autumn's tuition at St. Regis, a private elementary school, and $26.00 per month for her various lessons. The transcript at trial indicates the cost of the dance lessons alone was $26.00. Autumn takes dance lessons two hours a week, in addition to piano lessons and Scouts.

Appellant has on occasion attended her dancing functions and her Scout activities.

Autumn was less than two years old at the time of dissolution and was almost ten years old at the time of the modification hearing. She has attended St. Regis since starting school. She had the ability to read and do simple math before entering kindergarten. When choosing a school for Autumn, respondent applied on her behalf at the Montessori school and the math/science magnet specifically. There were no openings due to the quotas in the Montessori school, so Autumn was placed on the list for the math/science magnet. Respondent and Autumn moved to the Hickman Mills School District during the summer before Autumn entered kindergarten.

A challenging curriculum was one of respondent's requirements in choosing a school for Autumn to attend. Through research, respondent found that St. Regis ranked significantly higher than the Kansas City and Hickman School districts on the Iowa Basic Skills Test.

Autumn also attends the extended care program at St. Regis. This allows respondent to drop her at school at 6:30 a.m. where she is fed breakfast before class and pick her up after work around 5:30 p.m. This is necessary since respondent drives to Lenexa every day where she works from 7:15 a.m. to 4:45 p.m.

At the modification hearing, the trial court had before it the parties' income and expense statements, in addition to their Form 14 calculations. The court entered its own Form 14 calculation which is the basis of this appeal. The cost of Autumn attending a private elementary school along with her dance lessons and piano lessons was included on Line 4e under extraordinary expense. The trial court heard the evidence presented and determined that appellant had the ability to pay child support in the increased amount of $523.34.

### STANDARD OF REVIEW

■ An award of child support is within the sound discretion of the trial court. *McMickle v. McMickle*, 862 S.W.2d 477, 484 (Mo.App.1993). The trial court's ruling with regard to such issue will be affirmed unless it is unsupported by substantial evidence, unless it is against the weight of the evidence, or unless it misstates or misapplies the law. *Id.* at 480–81. Great deference is awarded the trial court in determining the witnesses' credibility due to their superior ability to view their demeanor while testifying. *Id.* Absent a manifest abuse of discretion, appellate courts will not substitute their judgment for the trial court's. *Holmes v. Holmes*, 878 S.W.2d 906, 909 (Mo.App.1994). The trial court's award of support will not be disturbed unless the evidence is "palpably insufficient" to support it. *Id.*

### I.

In Point I appellant contends that the trial court abused its discretion in ordering him to contribute to the child's expenses for private school, dance lessons, and piano lessons in that: a. he did not have the financial ability to contribute to said expenses and that respondent had the ability to pay for all the expenses without any contribution from him; and, b. the expenses are not properly included in the Form 14 calculation of the trial court. Logically we will address appellant's second contention first in that if the expenses were improperly included in the Form 14 calculation, the issue of appellant's ability to pay a portion of them is rendered moot.

### A. *Inclusion of Extraordinary Expenses in Form 14 Calculation*

■ Rule 88.01 and § 452.340 govern the award of child support in this state. Rule 88.01, when read with § 452.340, provides a two-step procedure for determining child support. *Woolridge v. Woolridge*, 915 S.W.2d 372, 378 (Mo.App.1996). In step one, the trial court is required to calculate the child support amount pursuant to Civil Procedure Form No. 14. Rule 88.01; *Woolridge*, 915 S.W.2d at 378; *Hamilton v. Hamilton*, 886 S.W.2d 711, 716 (Mo.App.1994). There is a rebuttable presumption that the amount of child support calculated pursuant to Form 14 *is* the amount of child support to be awarded. Rule 88.01. Thus, in step two, the trial court considers whether to rebut the

presumed correct Form 14 amount as being unjust or inappropriate after consideration of all relevant factors. Rule 88.01; *Woolridge,* 915 S.W.2d at 378. The burden is on the party seeking to rebut the Form 14 amount to show that it is unjust or inappropriate. *Rule 88.01; § 452.340.8; Wenger v. Wenger,* 876 S.W.2d 735, 740 (Mo.App.1994).

In this case, the trial court rejected the Form 14's submitted by the parties and did its own Form 14 calculation. Based on its calculation, the trial court determined the presumed correct child support to be $523.24 per month. The trial court included in its Form 14 calculation $266 as "extraordinary expenses" for private elementary school, piano lessons, and dance lessons. The trial court awarded child support in the amount it calculated without "rebutting" it as being unjust or inappropriate.

■ Although Form 14 is a mandated "formula" to be used by the trial court in determining child support, the trial court determines which Form 14 items and their respective amounts are properly included in the calculation based on the *Directions for Completion of Form 14* and the evidence presented. *Woolridge,* 915 S.W.2d at 379; *Hamilton,* 886 S.W.2d at 716. Form 14 permits the trial court to consider for inclusion in the calculation any "[e]xtraordinary expense (Agreed by parents or ordered by Court)." Civil Procedure Form No. 14, Line 4e.[1] In defining extraordinary expense, the *Directions for Completion of Form 14* provide in pertinent part:

Worksheet, line 4e

Enter other extraordinary expenses agreed to by the parties or ordered by the court. Other extraordinary expenses may include the cost of *attending* tutoring sessions; special or *private elementary* and secondary *schools to meet the particular educational needs of the child;* camps, *lessons,* travel or other activities *intended to enhance the athletic, social or cultural development of the child(ren).* (emphasis added).

There are numerous decisions of this court and the other appellate courts of this state rendered before the 1994 amendment to Form 14 that discuss the appropriateness of considering the extraordinary expenses, which appellant questions, when calculating child support. However, we need not cite those decisions for authority on that issue since Form 14 now specifically permits the trial court to consider extraordinary expenses for private elementary school, dance lessons, and piano lessons. Thus, the issue here is whether the inclusion of the extraordinary expenses in the amount of $266 in the Form 14 calculation by the trial court was supported by the evidence. Based on the record, we find that it was.

■ Appellant first argues that the evidence does not establish that the benefits to Autumn of private schooling are "extraordinary" or "unique" warranting inclusion in the Form 14 calculation. The argument is not well founded.

Respondent's testimony established that it cost $240 per month for Autumn to attend St. Regis which the trial court found to be reasonable and included in its Form 14 calculation as an extraordinary expense. As to private school expenses, the *Directions for Completion for Form 14* define extraordinary expenses as expenses which "meet the *particular* educational needs of the child." (emphasis added). The record reflects that St. Regis, a private elementary school, meets Autumn's particular educational needs.

Autumn was advanced for her age. She could read and do simple math before entering kindergarten. As a result, respondent was looking for a school to challenge her academically. Respondent and Autumn moved to the Hickman Hills School District during the summer before Autumn entered kindergarten. Respondent through research found that on the Iowa Basic Skills Test, St. Regis had a significantly higher average score than the Kansas City and Hickman School Districts and that the curriculum at St. Regis seemed to be the most challenging

---

1. Line 4 of Civil Procedure Form No. 14 was amended to include Health insurance cost for the child; Uninsured extraordinary medical expenses, and Extraordinary expenses. The effective date of this amendment was April 1, 1994.

and appropriate given Autumn's needs. Appellant admits in his brief that Autumn has always attended private school and acknowledges the academic worth of St. Regis. He never complained about Autumn's attendance at St. Regis before he was ordered to contribute to the cost of tuition.

In addition to curriculum, respondent had other educational related concerns when she was deciding in which school to enroll Autumn, one of which was the availability of extended child care. St. Regis provides extended child care. This allows respondent to drop Autumn at school at 6:30 a.m. where she is fed breakfast before class and pick her up after work at 5:30 p.m. This is necessary since respondent drives to Lenexa every day where she works from 7:15 a.m. to 4:45 p.m. Respondent was also concerned about Autumn changing schools in that it might negatively impact on her education.

For the reasons stated, we find the record supports a finding that private schooling meets the particular educational needs of Autumn rendering it an "extraordinary expense" pursuant to Form 14.

■ Appellant next argues that regardless of the benefits the child derives from private schooling, the same benefits could be derived from public schooling. There is nothing in the record to support this contention other than appellant's assertion that it was "common knowledge" which the trial court should have noted without prompting. (App. Br. at 17–18). It is true the trial court can take judicial notice of "common knowledge." *Colvin v. Carr,* 799 S.W.2d 153, 158 (Mo.App. 1990). However, assuming for the moment that the public schools do offer the same benefits as private schools as claimed, there is nothing to indicate it would be "common knowledge." In addition, even assuming it is "common knowledge," the proponent is required to request the trial court to take judicial notice of the knowledge to afford the other party an opportunity to respond and the trial court an opportunity to rule. *Morrison v. Thomas,* 481 S.W.2d 605, 607 (Mo. App.1972). Here, appellant made no such request leaving the record void as to appellant's assertion. Without any factual support in the record, his argument that like child care was available at the public schools must fail.

■ The law is well-settled in Missouri that the court will defer to the judgment of the custodial parent with respect to decisions concerning education beyond that provided by the state system. *Jenks v. Jenks,* 385 S.W.2d 370, 380 (Mo.App.1964); *see Toomey v. Toomey,* 636 S.W.2d 313, 315 (Mo. banc 1982), *cert. denied,* 459 U.S. 1106, 103 S.Ct. 730, 74 L.Ed.2d 955 (1983). In light of that standard, we find on this claim, the trial court did not abuse its discretion in including in its Form 14 calculation an extraordinary expense in the amount of $240 for private schooling.

■ Appellant next contends that the evidence does not support a finding that the expenses for dance and piano lessons were "extraordinary" or for an "extraordinary purpose." The argument is without merit. In regard to dance and piano lessons, the *Directions for Completion for Form 14* define extraordinary expenses as expenses for "lessons ... intended to enhance the ..., social or cultural development of the child." Dance lessons and piano lessons logically fall into this category.

Autumn attends dance lessons two hours a week, in addition to piano lessons. Appellant has on occasion attended her dancing functions. Although the record reflects that the trial court allotted $26.00 for dance *and* piano lessons, the trial transcript indicates the cost of the dance lessons alone was $26.00 per month, rendering no allocation for piano lessons as argued by appellant.

The trial court heard the evidence in this case and determined that extraordinary expenses of $266 per month for private elementary school, dance lessons, and piano lessons were reasonable and should be included in the Form 14 calculation at line 4e. We find that the evidence supported the inclusion of that amount in the trial court's Form 14 calculation.

### B. *Ability to Pay Extraordinary Expenses*

We now address appellant's other contention under Point I regarding his and re-

spondent's ability to pay the extraordinary expenses included by the trial court. Appellant's argument is basically two-fold: (1) that payment of his portion of the extraordinary expenses as determined by the Form 14 calculation of the trial court would reduce his ability to meet his basic necessities of life; and, (2) that respondent has the financial ability to pay for the expenses without contribution from appellant.

### 1. *Appellant's Ability to Pay*

We will first address appellant's argument regarding his ability to pay his percentage of the extraordinary expenses found by the trial court. As found above, the extraordinary expenses in question were correctly included in the trial court's Form 14 calculation. Consequently, appellant's portion of the extraordinary expenses are reflected in the child support he was ordered to pay.

█ In rebutting the presumed correct child support amount, both Rule 88.01 and § 452.340.8 provide that the presumed correct child support amount calculated pursuant to Form 14 can be "rebutted" provided the trial court finds that the amount is unjust or inappropriate after consideration of all relevant factors. Form 14 does not take into consideration the expenses of the parties when calculating the presumed correct child support amount. However, § 452.340.8 specifically provides that the "consideration of relevant factors" includes those set forth in § 452.340.1, one of which is the "financial resources and needs of the parties." Thus, this rebuttal consideration allows the trial court in the Form 14 framework to balance the needs of the child with the ability of the non-custodial parent to pay as urged by appellant here. *Weaks v. Weaks*, 821 S.W.2d 503, 507 (Mo. banc 1991); *Dachsteiner v. Dachsteiner*, 894 S.W.2d 248, 252 (Mo.App. 1995). The issue then is whether the trial court erred in failing to rebut its Form 14

amount due to appellant's inability to pay as claimed.

Rule 88.01 creates a rebuttal presumption that the Form 14 amount is the correct amount of child support to award. The rule places a burden on the party seeking to rebut the Form 14 amount to show that it is unjust or inappropriate after consideration of all relevant factors including the guidelines in § 452.340.1. *Rule 88.01, § 452.340.8; Wenger*, 876 S.W.2d at 740.

█ Appellant contends in his brief that the trial court in determining child support did not consider his ability to contribute to the extraordinary expenses. In that regard, his only argument is his conclusion that contribution by him would "reduce[ ] his ability to provide for his own basic needs, and thus in this respect the trial court order should be overruled." (App. Br. at 16). He does not point to anything in the record that would suggest the trial court did not consider his ability to contribute to the extraordinary expenses or that he lacked ability to contribute as alleged. Without evidence to the contrary, we can infer in ordering the appellant to pay child support in the Form 14 amount calculated, that the trial court considered his ability to pay and found the Form 14 amount was not unjust or inappropriate which is a prerequisite to rebutting a Form 14 amount. Thus, without any further inquiry on appeal, and because appellant has the burden to show that the trial court's award of child support was unjust or inappropriate due to his financial inability to pay, his claim regarding inability to pay must fail. *Rule 88.01, Wenger*, 876 S.W.2d at 740.

Even if we were to inquire further as to appellant's ability to pay, what we would find is that the trial court had before it the income and expense statement of appellant as well as related testimony.[2] There is no reason to believe that the trial court did not

---

2. The trial court in its findings specifically disallowed appellant's expense in the amount of $143.00 for the care and support of his mother. The court found on the record that appellant was under no legal obligation to support his mother and to the extent that he does so, makes payments voluntarily; he is not her sole support and these payments have no legal impact upon his income for purposes of the determination of child support. Although, the record is silent as to the court's findings with regard to appellant's other expenses, we afford the trial court great deference in determining credibility, viewing the evidence and drawing permissible inferences therefrom. *Dachsteiner*, 894 S.W.2d at 250.

consider that evidence in refusing to rebut its Form 14 amount due to appellant's inability to pay as claimed. *Cf. Sturgeon v. Sturgeon,* 849 S.W.2d 171, 175 (Mo.App.1993). The trial court was in the best position to determine the financial capability of appellant to assist in the support of his child, including school expenses. *L.A.L. v. L.L.,* 904 S.W.2d 50, 55 (Mo.App.1995). We will defer to the trial court's determination of child support, unless it is readily apparent the evidence is insufficient to support it. *Holmes,* 878 S.W.2d at 909. Such is not the case here. Consequently, we defer to the trial court's determination of child support and find the trial court did not err in refusing to rebut its Form 14 amount due to appellant's alleged inability to pay.

### 2. *Respondent's Ability to Pay*

■ Next, we address appellant's contention that he should be relieved of his responsibility to pay his portion of the extraordinary expenses as determined by the trial court's Form 14 calculation because respondent has the financial ability to pay the whole without contribution from him. Appellant's argument is without merit in that it ignores the requirement in the law that each parent has a responsibility to support his or her children commensurate with his or her ability to pay. *Sprague–Cappel v. Sprague,* 852 S.W.2d 361, 364 (Mo.App.1993); *Deardorff v. Bohannon,* 761 S.W.2d 651, 655 (Mo.App. 1988). The fact the one parent has the financial ability to provide for all the expenses of a child does not relieve the other parent of that responsibility. *Sprague–Cappel,* 852 S.W.2d at 364. Here, the trial court determined pursuant to Form 14 the percentage of the combined child support costs for Autumn that each party should pay based upon their monthly gross incomes. Appellant cannot escape his responsibility to pay his share of the child support, which includes his share of extraordinary expenses, based on his ability to pay simply because respondent could pay more if ordered. *Id.* To hold as appellant contends, would mean that a millionaire father who had the ability to pay child support would not be required to do so because the billionaire mother could provide the necessary support without contribution from him. That would not be fair and is not the law. *Id.*

For the reasons stated, Point I is denied.

### II.

■ Appellant contends in Point II that the trial court erred in that its failure to "rebut" its Form 14 amount by taking into consideration the contribution to respondent's living expenses by Charles Williams with whom she resides, was against the weight of the evidence and misstated the law. In support of his contention, appellant cites *McMickle,* 862 S.W.2d 477, 482–83, (Mo.App. 1993). Appellant's reliance on *McMickle* is misplaced.

In *McMickle,* the court recognized that the consideration of the extent to which household expenses are shared with a cohabitant pursuant to § 452.370.1, although relevant to a change of circumstances determination, is *not* a factor to be considered in a Form 14 child support calculation. *Id.* at 482. However, the court did hold that in determining the amount of child support "the contribution of [a cohabitant] to the payment of ... household expenses" could be considered under Rule 88.01(b), which provides for consideration of "the financial resources and needs of the parents," which is the same factor as found in § 452.340.1(2).[3] In so holding, the court reasoned that the language of Rule 88.01(b) "[w]hen given its plain and ordinary interpretation ... would naturally include consideration of the contribution" of a cohabitant. *Id.* The holding in *McMickle* is consistent with Rule 88.01 and § 452.340.8, which provide that the presumed correct child support amount may be "rebutted" upon a finding that the amount is unjust or inappropriate after consideration of all relevant factors. As noted supra, § 452.340.8 specifies § 452.340.1 factors as relevant factors to be considered in rebuttal.

■ Although couching his argument in terms of "rebutting" the Form 14 amount,

---

3. The *McMickle* court did not extend the cohabitant contribution consideration to a consideration under 88.01(a) as to the child's resources as argued by appellant.

what appellant is really arguing here is that the cohabitant contributions "enhance" respondent's ability to pay a larger portion of the Form 14 amount. In effect, appellant is arguing that "income" should be imputed to respondent in the Form 14 calculation to reflect respondent's "enhanced income." The trial court in its findings rejected that argument, holding that cohabitant contributions were not to be treated as imputed income for purposes of child support calculations. This is consistent with the holding in *McMickle* that the consideration of cohabitant contributions is *not* a Form 14 calculation consideration. We agree. "Reduced expenses" resulting from cohabitant contributions to expenses of a party cannot be considered "imputed income" for purposes of a Form 14 calculation. See *DIRECTIONS FOR COMPLETION OF FORM 14*, Worksheet, line 1.

The "cohabitant contribution" consideration does not entail a comparison of the incomes of the parents to determine what each parent should pay as his or her fair share or percentage of the combined child support costs as determined by Form 14. Rather, it involves an expense analysis to determine the ability of each parent to pay his or her share and whether the Form 14 amount is unjust or inappropriate. Given that fact, appellant's argument on this point is the same argument he put forth in Point I regarding extraordinary expenses, that because respondent has the ability to pay more child support she should be required to do so regardless of his ability to pay as ordered. As we found above, that is not the law. *Sprague–Cappel,* 852 S.W.2d at 364. As a result, we find that the trial court's findings on this point were not against the weight of the evidence and did not misstate the law. Point II denied.

## III.

In Point III, appellant asserts the trial court erred by (1) incorrectly computing its Form 14 amount; (2) failing to rebut its

Form 14 amount as unjust or inappropriate; and, (3) failing to do a Rule 88.01 analysis; each of which caused the trial court to enter an award of excessive child support.

### A. *Computation of Form 14 Amount*

Appellant claims the trial court incorrectly computed its Form 14 amount. We agree. In calculating the presumed correct child support amount, the trial court made the following findings as to its Form 14 calculation:

| | |
|---|---|
| Appellant's gross monthly income | $ 2,073.07 |
| Respondent's gross monthly income | 2,429.00 |
| Combined gross monthly income | 4,502.07 [4] |
| | |
| Combined adjusted gross income amount from the Rule 88.01 schedule | 643.00 |
| Custodial parent's reasonable work related child care costs (actual less federal tax credit) | 111.00 |
| Health insurance for the child | 73.70 |
| Uninsured extraordinary medical expenses | .00 |
| | |
| Extraordinary expense: | |
| parochial school | 240.00 |
| dance & piano lessons | 26.00 |
| | 266.00 |

COMBINED CHILD SUPPORT COSTS    $ 1,093.70 [5]

Respondent's proportionate share of the combined child support costs was calculated as 54% and appellant's as 46%. Forty-six percent of $1,093.70 is $503.10, not $523.34 as calculated by the trial court. Accordingly, the trial court's calculation and award of $523.34 is incorrect. Rule 84.14 allows this court to finally dispose of a case unless justice otherwise requires. Since the error here is a mathematical error in the Form 14 calculation only, it is not necessary for this court to remand this issue to the trial court for recalculation when we have already done a correct calculation based on the trial court's Form 14 findings.

### B. *Failure to Rebut Form 14 Amount*

In his second contention, appellant contends the trial court erred in failing to rebut its Form 14 amount as being unjust or inappropriate under Rule 88.01. Appellant argues that the trial court's failure to rebut

---

**4.** The correct computation for combined gross monthly income of the parties is $4,502.07, not $4,502.27 as found by the trial court.

**5.** This court completed the mathematical calculation for the combined child support costs since the trial court did not enter that amount on the record.

was against the weight of the evidence. We disagree.

Appellant argues that respondent's income and expense statement reflected total expenses for Autumn in the amount of $566.00 which was less than the combined child support costs of $1,093 found by the trial court in its Form 14 calculation mandating "rebuttal," citing *Harding v. Harding,* 826 S.W.2d 404, 407 (Mo.App.1992) as authority. Appellant's reliance on *Harding* is misplaced. In *Harding* the court did not restrict the trial court to the income and expense statement of the custodial parent in determining the child's expenses. *Id.* at 407–08. On the contrary, the court specifically held that in determining expenses, the trial court should consider all relevant evidence, including the custodial parent's testimony as well as her income and expense statement. *Id.* Here, respondent reflected for Autumn in her income and expense statement (Tr. Ex. 2) expenses under "Other Expenses" of $411.00 and under "Day Care or Babysitter" of $155.00 for a total of $566.00. However, the income and expense statement of respondent does not include the $266 for extraordinary expenses which were testified to by respondent and included in the trial court's Form 14 calculation. Adding the extraordinary expenses of $266.00 to the $566 totals $832. The $832 does not include a reasonable allocation for Autumn of respondent's expenses for housing, utilities, and transportation which total $994. *Sprague–Cappel,* 852 S.W.2d at 364. By allocating $261 of respondent's housing, utilities, and transportation expenses to Autumn, we reach the $1,093 combined child support costs found by the trial court. Such an allocation represents an approximate 26% allocation, which would not be an abuse of discretion. Inasmuch as the $1,093 combined child support costs used by the trial court in calculating its Form 14 amount was supported by the evidence, rebuttal here under *Harding* is not mandated as claimed by appellant.

■ Appellant in further support of his argument that the trial court should have "rebutted" its Form 14 amount, basically invites us to review the entire record to satisfy ourselves that the trial court erred in not rebutting. We are not obliged to conduct such a review. *Speicher v. Dunn,* 530 S.W.2d 45, 46 (Mo.App.1975).

Great deference is to be paid to the child support determination of the trial court and will not be disturbed unless it is readily apparent the evidence is insufficient to support it. *Holmes,* 878 S.W.2d at 909. In determining child support here, the trial court chose not to rebut its Form 14 amount. The burden is on appellant to show that the Form 14 amount was unjust or inappropriate. *Wenger,* 876 S.W.2d at 740. Other than inviting us to review the entire record, appellant does not direct us to anything specific in the record from which we can find that the trial court's refusal to rebut was against the weight of the evidence as claimed by appellant.

### C. Failure to Do Rule 88.01 Analysis

■ Appellant's third contention under Point III is that the trial court failed to conduct a Rule 88.01(a)(b)(c)(d)(e) "analysis" which caused it not to rebut the Form 14 amount as being unjust or inappropriate. Appellant's argument is without merit. Rule 88.01 provides that an amount calculated pursuant to Form 14 is presumed to be the correct amount of child support to award. Inasmuch as the rule requires the consideration of the Rule 88.01 factors set out in Rule 88.01(a)(b)(c)(d), in doing a Form 14 calculation, there is a presumption that the factors have been considered and the Rule 88.01 "analysis" referred to by appellant is done, subject to any "rebuttal" considerations. As a result, the trial court's findings as to its Form 14 calculation satisfied Rule 88.01 and appellant's request for findings of fact and conclusions of law as to a Rule 88.01(a)(b)(c)(d) "analysis."

As to the trial court's Rule 88.01 "analysis" and findings, appellant specifically complains that request number 15 of his request for findings of fact and conclusions of law requesting: "How much money per month is needed for the total support of the child.", was not answered. We disagree. By doing its own Form 14 calculation for the record which included a finding that the combined child support costs were $1,093, the trial

court fully complied with appellant's request number 15.

For the reasons stated, Point III denied.

## CONCLUSION

We affirm in part and reverse in part and remand for the sole purpose of the trial court entering a child support award of $503.10 per month.

All concur.