Norman ZALMANOFF,
Respondent/Cross–
Appellant,

v.

Sharon ZALMANOFF, Appellant.

Nos. 62518 & 62581.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 5, 1993.

Ted Frank Frapolli, Richard W. Fischer, St. Louis, for respondent/cross-appellant.

M. Deborah Benoit, Bruce Hilton, St. Louis, MO, for appellant.

SIMON, Presiding Judge.

Sharon Zalmanoff, wife, appeals from an order modifying a dissolution decree, and Norman Zalmanoff, husband, cross-appeals. Wife and husband were married in 1963. Two children were born of the marriage: Jodi Zalmanoff, daughter, born June 22, 1971, and Sean E. Zalmanoff, son, born March 4, 1978. The decree of dissolution of the marriage, granted on March 24, 1987, awarded custody of both children to wife, and ordered husband to: pay $300 per month for the support of each child and $500 per month to wife for her maintenance; maintain in full force and effect health and hospital insurance for the minor children and husband's life insurance policy naming minor children as beneficiaries; and not change the beneficiaries of his life insurance policy until the youngest of the children is emancipated.

On September 20, 1988, the trial court issued a modification order which reduced the maintenance from $500 to $150 per month; required wife to maintain health, hospitalization, medical, and dental insurance on behalf of the minor children; relieved husband of his obligation to provide and maintain health, medical, and dental insurance; and required husband to pay wife or health care provider upon written notice for one half of the reasonable and necessary medical expenses incurred on behalf of the minor children not covered by health insurance benefits provided by wife's employer.

On October 2, 1990, husband filed a motion to modify the dissolution decree seeking:

termination of wife's maintenance; elimination of child support for daughter due to her emancipation; and a judgment against wife for back child support for daughter paid by husband after her emancipation. Husband subsequently filed an amended motion to modify and a motion to adjudicate daughter emancipated.

On December 6, 1990, wife filed a motion for judgment against husband for failure to pay one half of daughter's medical expenses. Wife also filed a cross-motion to modify, seeking to increase child support and maintenance, and to require husband to pay for the minor children's health insurance. Later wife filed a motion for contempt for husband's failure to keep in effect his life insurance policy for the benefit of his minor children. All motions were presented to the trial court on March 23, 1992.

Wife is employed at St. John's Mercy Medical Center. She works 40 hours a week earning $7.39 an hour. When wife's maintenance was modified in 1988, her income was $11,050. In 1990, her income increased to $14,405.00, and in 1991, it increased again to $16,422.31. Her income for 1989 is not part of the record on appeal. She testified that she was diagnosed as a diabetic after the modification order in 1988 and that her medication for diabetes was very expensive. The record indicates wife was spending $55 a month on her medication.

Husband is a self-employed mechanic. In 1988, husband's income was $18,996. Husband earned $25,293 in 1989, $26,427 in 1990, and $27,920, or $2,325 per month, in 1991. On direct examination, husband testified as follows:

Q. ... So—So your net income for 1991 is $27,920, correct?

A. Yes.

Q. Okay. Now what is your projection for 1992?

MS. BENOIT: Objection, Your Honor. It calls for speculation.

THE COURT: Overruled. Go ahead.

BY MR. FRAPOLLI:

Q. Do you think your income will be— Your net income, will that be less or more than that?

A. I'm saying this year, the way things seem to be, that, if I had a $20,000 year, it's going to be—going to be a good year.

Q. Okay. And why is that?

A. Business is terrible. It's just— There's just nothing going on right now. The last—The last five months, I've averaged about $1,550 a month,—

Q. Okay.

A. —from October through March.

On cross-examination, husband testified as follows:

Q. ... Has your business changed at all, or is it basically the same business that you've been operating since 1988?

A. I lost one very good account that I had.

Q. And who was that?

A. Jefferson—Jefferson Smurfit.

Q. And have you managed to replace that account with other business?

A. No not—not to that extent.

Daughter graduated from high school in June 1989 when she was eighteen, and enrolled at the University of Missouri–St. Louis in August 1989 as a part-time student. The evidence shows she remained enrolled at that university, averaging 8 hours a semester. She did not attend school during the summer. In October 1990, daughter started working at Hit or Miss, a clothing store, for $5.85 per hour. She worked there an average of 15 hours a week. Daughter earned $5,975.64 in 1991. She had her own checking account. Out of her earnings, daughter bought her own car, paid for her tuition, books, gas, car repairs, car insurance, phone bills, most of her clothes, cosmetics, and haircuts. She lived with her mother, but did not give her mother any regular contributions on a monthly basis to defray household expenses. Wife did not impose a curfew or any other rules on her daughter, and did not supervise her work or school schedule. Wife did not give daughter an allowance, and when she did give daughter money, she loaned it to her. However, wife did buy clothes and food for daughter, and· paid for her daughter's health insurance. Wife paid $40 to $50 per

month for her daughter's clothes, but the record does not reflect how much she paid for food. The health insurance for the children cost $88 per month in 1991, and increased to $100 per month in 1992. The record does not indicate how much she paid for health insurance from 1988 to 1990.

At the trial, wife's counsel did not submit a Form 14, which calculates the presumed child support amount, to the trial court. Instead, counsel requested that for any child support finding the court incorporate as part of its decree a child support calculation chart. Further, husband testified that he had initially misread the modification order to have terminated his obligation to maintain life insurance under the dissolution decree. Husband admitted that at the time of trial he understood the modification order did not terminate this obligation, and that he had not reinstated his policy.

Subsequently, the trial court issued an order of modification providing: (1) husband to pay $248 a month in child support for son; (2) daughter deemed emancipated and the obligation of husband to pay child support for the daughter was terminated; (3) wife's maintenance was terminated; (4) wife's cross-motion to modify, motion for judgment against husband, and motion to hold husband in contempt were overruled; (5) each party was ordered to pay his or her own attorney's fees and costs; (6) husband's motion to adjudicate daughter emancipated was sustained; and (7) husband and wife were ordered to pay one half of all medical expenses of son not paid through insurance or health plan coverage. Wife subsequently filed a motion for new trial or in the alternative to amend judgment, which the trial court heard and overruled on July 30, 1992.

On appeal, wife contends that the trial court abused its discretion in: (1) declaring daughter emancipated; (2) terminating wife's maintenance and not reserving jurisdiction over maintenance in the future; (3) ordering husband to pay $248 per month in child support for son; and (4) refusing to hold husband in contempt for his failure to maintain his life insurance in effect for the benefit of his minor children.

In his cross-appeal, husband claims the trial court erred in (1) not ruling that daughter was emancipated as of her graduation from high school, and (2) not ordering wife to pay husband back child support for daughter paid after her daughter's emancipation.

We reverse the termination of maintenance and remand for a determination of the date of daughter's emancipation and for any further order relative thereto, and affirm in all other respects.

■■■ Our review is governed by the well-known principles of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of evidence, or unless it erroneously declares or applies the law. *Id.* at 32[1–3]. Further, "[a]s trier of fact, it is the function, indeed the duty, of the trial court to decide the weight and value to be given to the testimony of any witness. On appeal, we view the evidence in a manner favorable to the decree and disregard contradictory evidence." *Wynn v. Wynn*, 738 S.W.2d 915, 918[1] (Mo.App.1987) (citation omitted). "We defer to the trial court even if the evidence could support a different conclusion." *Id.*

In her first point, wife contends that the trial court abused its discretion in declaring daughter emancipated. Wife argues that husband must pay child support for daughter pursuant to Sections 452.340.3 and 452.340.5 R.S.Mo.Cum.Supp.1992 (all further statutory citations will be to R.S.Mo.Cum.Supp.1992). Section 452.340 provides in pertinent part:

\* \* \* \* \* \*

3. Unless the circumstances of the child manifestly dictate otherwise and the court specifically so provides, the obligation of a parent to make child support payments shall terminate when the child: ... (5) Reaches age eighteen, unless the provisions of subsection 4 or 5 of this section apply.

\* \* \* \* \* \*

5. ... If the child is enrolled in an institution of vocational or higher education not later than October first following gradua-

tion from a secondary school and so long as the child continues to attend such institution of vocational or higher education, the parental support obligation shall continue until the child completes his education, or until the child reaches the age of twenty-two, whichever first occurs.... "Higher education" means any junior college, college, or university at which the child attends classes regularly.

(Emphasis original.) The plain language of 452.340.5 does not require that the child attend the vocational or higher education institution on a full-time basis. *Mayes v. Fisher,* 854 S.W.2d 430, 432 (Mo.App.W.D.1993). In *Mayes,* the court held where child was taking only a three-credit-hour evening class, which met once a week, this fact standing alone was not sufficient to relieve the noncustodial parent of further obligations under Section 452.-340.5. *Id.*

▮ Initially, we note that the trial court has considerable discretion in awarding child support. *Steffens v. Steffens,* 773 S.W.2d 875, 876[1] (Mo.App.1989). If the requirements of 452.340.5 are met, the court can still find that the child is emancipated if "the circumstances of the child manifestly dictate...." § 452.340.3. Further, courts have implicitly recognized that trial courts have the discretion to find a child emancipated under §§ 452.340.3 and 452.340.5. *Mayes,* 430 S.W.2d at 432; *Sparks v. Trantham,* 814 S.W.2d 621, 624[1, 2] (Mo.App.1991).

▮ Emancipation means the "freeing of a child for all the period of its minority from care, custody, control and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it." *Sparks,* 814 S.W.2d at 624[1, 2]. Relinquishment of parental control "may be inferred from a child's attaining a status or position inconsistent with remaining subject to parental care and control ... and from such things as parental acquiescence in child's working for others, receiving pay therefor, and spending the money as it pleases." *Id.* at 625[3]. "Emancipation can be accomplished by either expressed or implied consent of the custodial parent." *Id.* at 624[1, 2]. "Emancipation is

never presumed and the burden is on the party asserting it." *Id.* Pursuant to Section 452.340, courts may declare a child emancipated even though the child receives significant financial and material support from others, including the custodial parent. *Id.* at 625–26[4].

▮ The evidence is sufficient for the trial court to find that wife had relinquished control over daughter and that daughter was emancipated. Wife did not impose a curfew or any other rules on her daughter, did not supervise her work or school schedule and did not give daughter an allowance, and when she did give daughter money, it was considered a loan. Further, out of her earnings, daughter bought her own car, paid her tuition, books, gas, car repairs, car insurance, phone bills, most of her clothing, cosmetics, and haircuts. Although wife allowed daughter to live with her without requiring daughter pay rent or any other monthly contribution toward household expenses, bought clothes and food for her, and paid her health insurance, the trial court had sufficient evidence to find daughter emancipated based on the other factors. Even if we would have decided this issue differently at the trial court level, on review, we must defer to the trial court where there is sufficient evidence to support its decision. *Wynn,* 738 S.W.2d at 918[1].

Moreover, the appellate courts of this state reached the same result in similar cases. First, in *Sparks,* child had her own apartment while attending college, but mother had given her bed linens, food, furniture, laundry detergent, and paid her automobile and health insurance. Mother admitted child used her earnings as she wished. Mother also did not exert parental control over child. *Sparks,* 814 S.W.2d at 623, 625[3]. The court affirmed the finding of emancipation holding that mother had relinquished control by implied consent. *Id.* at 625[3]. Second, in *Rapplean v. Patterson,* 631 S.W.2d 693 (Mo. App.1982), child lived with mother and his younger siblings while working full-time. Although he spent his money freely, and mother did not exercise any parental control, he ate his meals at home and did not make any payments toward household expenses. *Rap-*

*plean,* 631 S.W.2d at 694[1]. In affirming, we found that emancipation was supported by substantial evidence. *Id.* at 694[2, 3]. Third, in *Black v. Cole,* 626 S.W.2d 397 (Mo. App.1981), child worked full-time but mother bought him clothing and food. (Although child did not pay for housing, the opinion does not clearly indicate whether child was living with mother.) *Black,* 626 S.W.2d at 398[4]. The court affirmed the finding of emancipation holding that the evidence was substantial. *Id.* Finally, in *In re Marriage of Berkbigler,* 560 S.W.2d 36 (Mo.App.1977), child worked twenty to forty hours a week and attended class four hours a week. Child paid for her gasoline, lunches, insurance, long distance calls, and some of her clothes, but did not pay mother for room or board. *Berkbigler,* 560 S.W.2d at 39[3]. The court held that there was no error in not awarding child support "[c]onsidering all the circumstances." *Id.* Point denied.

In her second point, wife contends that the trial court abused its discretion in terminating wife's maintenance. Wife also asserts that the court erred in not reserving jurisdiction over her maintenance because wife has been diagnosed as a diabetic and could have increased medical needs in the future. Husband testified that his income for 1992 would decrease because business was bad. She asserts that on the basis of this testimony, husband's projection was speculative, relying on *Mendelsohn v. Mendelsohn,* 787 S.W.2d 321 (Mo.App.1990). In *Mendelsohn,* husband testified in August, 1988 that he had experienced a permanent reduction in income, and thus, further payment of maintenance was unreasonable. The evidence indicated husband's income was $100,882 in 1987. Husband testified that his income for 1988 would be $94,000. He offered no evidence to prove that his 1988 income represented a permanent reduction. *Id.* at 323[2]. The court held that his testimony was speculative because husband offered no evidence to support the permanency of his income figure for 1988. *Id.*

■■■■ Section 452.370.1 provides that maintenance may be modified "only upon the showing of a change of circumstances so substantial and continuing as to make the terms unreasonable...." As a general rule, neither a decrease in obligor's earnings nor an increase in obligee's income alone justifies a modification of the terms of a maintenance award. *Mendelsohn,* 787 S.W.2d at 324[3]. However, a permanent loss in income of the obligor and an increase in the obligee's ability to earn may constitute a substantial change in circumstances. *Wilburn v. Wilburn,* 801 S.W.2d 78, 79–80[3] (Mo.App.1990). On direct examination, husband testified that his income for the previous year was $27,920. Husband testified that if his income would be $20,000 for the current year, it would be a good year. Husband explained that business was terrible, and that for the five months preceding trial, his income was $1,550 per month, or $18,600 a year. On cross-examination, husband testified that he had lost a very good account and that he had not replaced the account completely with other business. Husband offered no documentation as to the extent of this lost account's business or to what extent it had been replaced. Husband offered no documentation to prove the nature and extent of the downturn in his business. From his testimony, there is no indication that the decrease in his business is permanent. Further, husband bases his projected income for 1992 on the first three months of that year and the last two months of 1991 when his income was $27,920. There is no substantial evidence in the record to support husband's assertion that he has sustained a permanent reduction in income. *Mendelsohn,* 787 S.W.2d at 323[2].

In *Wilburn,* we held that the obligor's loss of income due to the disbandment of his law firm coupled with obligee's increased ability to earn was a substantial change making the original amount of maintenance unreasonable. The court reasoned that because obligor was 64 years old, any reasonable expectation of rebuilding his former level of business was significantly reduced. *Id.* at 79[3]. Implicit in the court's reasoning is the fact that obligor had lost clients whom he could not replace due to his age. Unlike the obligor in *Wilburn,* husband's business has not disintegrated, and he has failed to show that the business his lost client provided was irreplaceable.

Because husband failed to show a permanent decrease in income, the issue becomes whether in light of daughter's emancipation, the trial court had sufficient evidence to terminate maintenance. To begin with, we note that it is proper for the trial court to consider emancipation of minor children as a factor along with others relative to a termination of maintenance. *Hebron v. Hebron,* 566 S.W.2d 829, 835[12, 13] (Mo.App.1978). The record on appeal indicates wife still has to provide for minor son. Further, although daughter is no longer subject to wife's control, wife still pays for daughter's health insurance, food, shelter, and some of her clothes. In addition, wife has increased medical needs due to her diabetic condition. As wife's increase in income cannot be the sole factor for terminating maintenance, we hold that the trial court's ruling was not supported by substantial evidence. *Mendelsohn,* 787 S.W.2d at 324[3].

Finally, wife argues the trial court erred in not reserving jurisdiction over future maintenance. Since we have reversed the award of maintenance it is not necessary to address this contention.

In her third point, wife contends that the trial court abused its discretion in ordering husband to pay $248 per month in child support for son. Wife asserts that the trial court misapplied the law for the following reasons: the court based its calculations on husband's speculative testimony regarding his income; the court did not consider children's health insurance premiums paid by wife; and the court did not include daughter's education costs.

Custodial and noncustodial parents must calculate the presumed child support and submit their calculations to the trial court in a Civil Procedure Form 14. *Ibrahim v. Ibrahim,* 825 S.W.2d 391, 398[8] (Mo.App.1992). Counsel contends that her request to the trial court is a sufficient substitute for filing a Form 14 because *Ibrahim* was decided two weeks before trial, and consequently, counsel did not know that filing a Form 14 was required.

Counsel's request did not constitute a substitute for a Form 14 because her request failed to offer the trial court calculations of child support conforming with the requirements of a Form 14. Further, even if counsel is excused for not knowing at the trial that presentation of a Form 14 was required, counsel had the opportunity to present a Form 14 at the hearing for her motion for new trial or in the alternative to amend judgment eighty-eight days after the judgment. Wife's failure to submit a Form 14 precludes her from challenging the child support award on appeal in accordance with our decision in *Ibrahim.* In *Ibrahim,* the appellant challenged the child support award. Appellant failed to show that he submitted a Form 14 to the trial court. The court held that *appellant's failure to make a showing that he filed a Form 14 with the trial court precluded him from contesting the issue of child support on appeal.* The court reasoned that appellant's challenge was "akin to pursuing a different theory for recovery on appeal than was pursued at trial." *Ibrahim,* 825 S.W.2d at 398[8]. The court explained that it cannot, on review, convict a lower court of error on an issue which was not put before it. *Id.* Similarly, wife has failed to show that she submitted to the trial court a Form 14 or any other calculations for child support conforming with a Form 14, and thus, wife is precluded from challenging the child support award. Point denied.

In her fourth point, wife contends that the trial court abused its discretion in refusing to hold husband in contempt for his failure to maintain his life insurance for the benefit of his children. Wife points out that husband admitted at trial that he understood the modification order did not terminate this obligation, and that he had not reinstated his policy.

An order to secure child support through life insurance is void because a parent is not required to support his children after his death. *Steffens,* 773 S.W.2d at 877[3]. The trial court would have violated this rule had it held husband in contempt. Point denied.

In his cross-appeal, husband contends that the trial court erred in not ruling that daughter was emancipated as of her graduation from high school in 1989. There is no evi-

**948**

dence in the record on appeal indicating daughter was employed before October, 1990. Moreover, there is no evidence regarding precisely when wife ceased to exert parental control over daughter.

 Where the record before the Court of Appeals is insufficient to render a fair judgment, the court will remand to the trial court to determine the issue. *Rogers v. Rogers,* 573 S.W.2d 425, 426[2] (Mo.App.1978). In light of our decision, we remand for a determination of the date of daughter's emancipation and for any further order relative thereto.

Judgment affirmed in part, reversed and remanded in part.

STEPHAN, and PUDLOWSKI, JJ., concur.