**Mona Denise WENGER, Respondent,**

v.

**Steven W. WENGER, Appellant.**

**No. 62757.**

Missouri Court of Appeals,
Eastern District, Division Three.

April 5, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 4, 1994.

Application to Transfer Denied
June 21, 1994.

from fully and fairly presenting his case. *Id.* at    217.

Eisen, Gillespie & Hilton, Lawrence G. Gillespie, Webster Groves, for respondent.

David L. Campbell, St. Louis, for appellant.

SIMON, Presiding Judge.

Steven W. Wenger, father, appeals from an order of the trial court granting the motion of Mona Denise Wenger, mother, to modify a dissolution decree and denying father's amended cross-motion to modify. On appeal, father contends the trial court erred in (1) granting mother an increase in child support; (2) making the increase in support retroactive; (3) awarding mother attorney fees; (4) assessing guardian ad litem fees against him; and (5) denying his cross-motion to modify the temporary custody and visitation provisions of the dissolution decree. We affirm.

Mother and father were married on October 6, 1984. One child, Rebecca Lynn Wenger ("Becky"), was born of the marriage, on January 13, 1986. On July 21, 1987, mother and father entered into a separation agreement. With respect to custody of Becky the separation agreement provided, in pertinent part, that mother shall have primary physical custody, with father to have temporary physical custody on alternate weekends from 6:00 p.m. Friday to 7:00 p.m. Sunday, alternate holidays, Father's Day, two weeks during the summer upon notice to mother by May 15, and at such other times as may be agreed upon by mother and father. The agreement provided, however, that father's temporary custody, in all events, shall not coincide with the times father has custody of Laura Christine Wenger, father's child from a previous marriage. The agreement also provided that father shall at no time leave Becky unattended with, and in the physical custody of, his parents, William F. Wenger and Wanda Lee Wenger. The agreement also contained the following pertinent provisions: (1) father pays mother $310.00 per month for support of Becky; (2) father maintains medical, hospitalization and dental insurance for Becky and, additionally, is responsible for one-half of medical expenses not covered or paid in full by insurance; (3) father has the right to claim Becky as an exemption for federal and state income tax purposes provided he complies with the support and medical expense provisions of the agreement and provided

also that he pays mother one-half of all amounts which he received under the returns as a result of his right to claim Becky as an exemption. The custody and support provisions were incorporated in the decree of dissolution, issued on July 21, 1987. On March 30, 1990, mother filed a motion to modify the dissolution decree seeking an increase in child support, and seeking an order for father to pay a proportionate share of any work related day care expenses incurred by mother for Becky, retroactive to the filing of the motion to modify. Mother's motion to modify also sought an order for father to pay her attorney fees and for costs to be taxed against father.

On June 12, 1990, father filed a cross-motion to modify, seeking to remove the dissolution decree's custody restrictions regarding father's other daughter and regarding father's parents. Father's cross-motion to modify also sought to modify the dissolution decree by: (1) allowing father to claim Becky as a dependent for income tax purposes without paying any sums to mother in connection with that right; (2) deleting the provisions requiring father to pay one-half of medical expenses not covered or paid in full by insurance; (3) allowing father to give written notice at least thirty days in advance of the summer temporary custody he will exercise, instead of on May 15; (4) granting father temporary custody of Becky from 10:00 a.m. Saturday to 7:00 p.m. Sunday on alternate weekends, and on Wednesday from 5:00 p.m. until 8:00 p.m. on those weeks father works the midnight shift; and (5) increasing father's summer custody of Becky from two weeks to four weeks. Father's cross-motion also sought an order pursuant to § 452.342 R.S.Mo.Cum.Supp.1993 (all further statutory references are to R.S.Mo.Cum. Supp.1993 unless otherwise noted) requiring mother to furnish father with a regular summary of expenses paid by her on behalf of Becky.

On September 9, 1991, father filed an amended cross-motion to modify stating that since the date of the dissolution decree, there have been changed circumstances so substantial and continuing as to make the terms of the decree unreasonable, including: (1)

mother cohabitates with a male person, to whom she is not married, who has repeatedly engaged in and continues to engage in acts of violence and various criminal activities in the presence of Becky; (2) mother has failed to keep her home reasonably safe in that said home is structurally unsound and unsanitary at all times when the minor child is present and in the custody of mother; (3) upon information and belief, mother has subjected the minor child to or has knowingly allowed Becky to be subjected to physical, sexual and emotional abuse and continues to do so; (4) mother has repeatedly and unreasonably withheld and interfered with father's rights to visitation with and temporary custody of Becky and has intentionally attempted and continues to attempt to alienate the affections of Becky away from father. Father's amended motion sought an order modifying the dissolution decree as follows: (1) father have sole care, custody and control of Becky; (2) mother not be allowed temporary custody of Becky; (3) mother not be allowed visitation with Becky except under supervision as directed by the court; (4) mother be ordered to pay father a reasonable sum for child support, retroactive to the date of the filing of father's amended cross-motion to modify; (5) mother be ordered to make all future payments of child support to the clerk of the court as trustee and that mother execute an assignment of wages for this purpose; (6) mother be enjoined and forbidden to allow Becky to be in the presence of mother's male cohabitant under any circumstances.

After a hearing, at which the interests of Becky were represented by a guardian ad litem, the trial court sustained mother's motion to modify and denied father's amended cross-motion. The trial court modified the order of child support contained in the dissolution decree and ordered father to pay mother $520.00 per month for the support of Becky, retroactive effective January 1, 1991. The trial court's order noted that the child support amounts were determined in accordance with authorized support guidelines. The trial court also ordered father to pay mother's attorney $4000.00 as and for attorney fees, and ordered father to pay $2371.00 to the guardian ad litem as and for attorney fees. This appeal follows.

Our review is governed by the well-known principles of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). We will affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of evidence, or unless it erroneously declares or applies the law. *Id.* at 32[1–3]. Further, "[a]s trier of fact, it is the function, indeed the duty, of the trial court to decide the weight and value to be given to the testimony of any witness. On appeal, we view the evidence in a manner favorable to the decree and disregard contradictory evidence." *Wynn v. Wynn,* 738 S.W.2d 915, 918[1] (Mo.App.1987). "We defer to the trial court even if the evidence could support a different conclusion." *Id.* Since no findings of fact or conclusions of law were requested or issued, we deem all facts to be found in accord with the trial court's order. *Cornell v. Cornell,* 809 S.W.2d 869, 874[5] (Mo.App. 1991).

In his first point, father claims the trial court erred in granting mother an increase in child support from $310.00 to $520.00 per month because there was no change in circumstances shown so as to justify such a modification, and the increase exceeded the amount provided by the chart, exceeded the amount requested by mother, and exceeded the amount necessary for the support of Becky.

With respect to modification of child support obligations, this court has stated:

It is axiomatic that the provisions regarding child support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms of the original decree unreasonable. In determining what constitutes substantial and continuing change of circumstances, the court is to consider all financial resources of both parties, including the extent to which their expenses should be shared by a present spouse. The burden is upon the party seeking modification to establish the changed circumstances. However, if the current support deviates from the support prescribed by the guidelines and the criteria set forth in Rule 88.01 by twenty percent or more, a prima facie case of a . . . change in circum-

stances so substantial and continuing as to make the present terms unreasonable has been established. Once this is established, the trial court must determine a new child support obligation in conformity with Rule 88.01.

Rule 88.01 directs the trial court to consider all relevant factors, including the following criteria: (1) the financial resources and needs of the child; (2) the financial need and resources of the parents; (3) the standard of living the child would have enjoyed had the marriage survived; (4) the physical and emotional condition of the child; (5) the educational needs of the child. Rule 88.01 specifies that there is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded. The Rule further specifies that this presumption is rebutted if the trial court enters a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate.

*Buckman v. Buckman,* 857 S.W.2d 313, 316–17[4–7] (Mo.App.1993).

■ Custodial and noncustodial parents must calculate the presumed child support and submit their calculations to the trial court in Civil Procedure Form 14. *Zalmanoff v. Zalmanoff,* 862 S.W.2d 941, 947[11, 12] (Mo.App.1993). Failure to submit Form 14 precludes a party from challenging a child support award on appeal. *Id.,* at [13]. Such a challenge is "akin to pursuing a different theory for recovery on appeal than was pursued at trial." *Id.* This court cannot, on review, convict the trial court of error on an issue which was not put before it. *Id.* Here, the record on appeal shows, and counsel for father conceded at oral argument before this court, that father did not submit to the trial court Form 14 or any other calculations for child support conforming with Form 14. Thus, father is precluded from challenging the child support award on appeal.

■ In any event, the record does not show an abuse of discretion on the part of the trial court. All of father's arguments raised in his first point are premised on the

assertion that mother's claimed income and expenses, as contrasted with information derived from her bank statements, tax returns and canceled checks, show that the income to which she admits is grossly understated while her expenses are greatly exaggerated.

The Form 14 submitted by mother without objection from father, shows her income as $1500.00 per month. Mother's statement of income and expenses, however, established her income as $1570.00 per month. Father's income was represented on mother's Form 14 as $4480.00 per month, less $310.00 child support for his other daughter, leaving a net $4170.00 per month.

Father challenged mother's income figure on cross-examination by questioning her about discrepancies between the amount of income she claimed on her tax returns and the amount of deposits recorded on bank statements for her business accounts. Mother explained that she had an insurance claim that settled, that she got some money from her parents, that since getting divorced she has sold things out of her home when she needed money, and that she sold a lot of stuff to get started in business.

Assuming mother's income was found by the trial court to be $1570.00, as it could be under the trial court's duty to determine credibility of witnesses, and father's income was as represented on mother's Form 14, their combined income is $5740.00 per month, 73% of which is attributable to father. The support obligation for one child, calculated pursuant to Rule 88.01 and Form 14, is $676.00 per month. Since father's proportionate share of the combined income is 73%, his presumed child support is approximately $491.00. Thus, support under the dissolution decree deviates from the support prescribed by the guidelines and the criteria set forth in Rule 88.01 by more than 20%. Therefore, the trial court was required to determine a new child support obligation in conformity with Rule 88.01, *Buckman*, at 317[4–7], and father's argument that the evidence did not show a change in circumstances warranting a modification of child support is without merit.

■ In addition, mother represents to this court that her statement of income and expenses contained an item of $35.00 per month

for pre-school costs for Becky which could be included on the Form 14 as reasonable work-related child care costs. Father represents in his brief that mother listed day care expenses as $120.00 per month. In either event, pursuant to Form 14 father would be responsible for 73% of reasonable work-related day care expenses. Mother's statement of income and expenses, however, admitted in evidence without objection, has not been made a part of the record on appeal. This court may consider exhibits not filed as immaterial to the issues on appeal. Rule 81.15. However, from the parties' discussion of the exhibits, they would appear to be relevant and perhaps even dispositive of father's point. The trial court's finding is presumptively correct, and father as appellant has the burden to demonstrate otherwise. *In re Marriage of Brooke*, 773 S.W.2d 496, 498[2] (Mo.App.1989). Where the contents of exhibits are not available, which prevents this court from discerning the basis for the trial court's judgment, which may have been supported by the exhibit, the judgment must be affirmed. *Id.* Here, had the exhibit been filed we might have concluded that the trial court's order with respect to the amount of child support was proper. Father, as appellant, had the burden to file the exhibit and convince us that the finding was erroneous. Father has not done so. Point denied.

■ Father's second point on appeal is that the trial court erred in granting retroactive child support to January 1, 1991 because there was no evidence to support the award and because the evidence showed that mother had not used any of her own funds for support of Becky during such period.

■ Section 452.370.6 permits modification of a child support order as to installments which accrued subsequent to the date of personal service. *Rothfuss v. Whalen*, 812 S.W.2d 232, 240[16] (Mo.App.1991). It is within the trial court's discretion to make the child support award retroactive, and we will not reverse that decision absent a clear abuse of discretion. *Id.*

Here, mother's motion to modify was filed on March 30, 1990, and personal service was effected on April 17, 1990. The trial court

ordered the support modification retroactive effective January 1, 1991. Father argues that the original support award was adequate, that mother did not show any expenses incurred in caring for Becky over and above the support amounts father paid which were not within mother's realm of responsibility, that at the time of the modification hearing mother had not had to incur or accumulate any debts with respect to Becky's care, and that mother had income of $61,465.00 in 1990 and $69,067.00 in 1991. These arguments, however, essentially center on the propriety of the support award itself, rather than on the propriety of making the award retroactive. These arguments also assume that the trial court found mother's income to be more than what she reported on her statement of income and expenses. However, as discussed in father's first point, these issues have been resolved against father.

■ In any event, this court "need not resort to speculation and conjecture in order to fathom what may have been in the mind of the trial judge in determining an appropriate date. It is the function of the trial judge to 'balance the equities' and we will not substitute our judgment for his." *Wexelman v. Donnelly*, 782 S.W.2d 72, 76[5] (Mo.App. 1989). Contrary to father's suggestion, we do not find that the retroactive award provides mother an accumulation of capital. *See, Rothfuss*, at 240[16]. Point denied.

■ In his third point, father contends the trial court erred in awarding mother attorney fees in that the amount awarded exceeded the sum mother's attorney claimed, and the evidence showed that mother had sufficient independent income and assets and was capable of providing her own fees.

■ Section 452.355.1 authorizes the trial court, "after considering all relevant factors including the financial resources of both parties," to award attorney fees. The trial court is vested with broad discretion in ordering payment of attorney fees and such an award is reviewable only for an abuse of discretion. *Dimmitt v. Dimmitt*, 849 S.W.2d 218, 222[11] (Mo.App.1993).

Father makes a two pronged attack on the trial court's order that he pay $4000.00 to mother's attorney. First, he argues that "a modification order requiring one party to pay the attorney's fees of another necessitates a showing of unusual circumstances justifying deviation from the rule that each party bear its own litigation costs." He relies on *Lyles v. Lyles*, 710 S.W.2d 440 (Mo.App.1986), and *Amedei v. Amedei*, 801 S.W.2d 491 (Mo.App. 1990). Father argues that where, as here, mother not only has the ability to pay her own fees, but it is shown that her disposable monthly income approximates that of his, it was error to award the attorney fees allowed here. Again, however, father's claim of error is premised on the factual contention that mother's income greatly exceeds that which she represented to the trial court. Since this fact is deemed to have been found in mother's favor, father's argument fails.

Father's second attack on the trial court's award of attorney fees is that the amount awarded is unsupported by the evidence. He argues that the evidence concerning fees was confined to the services performed by the attorney mother retained at the time of the modification hearing, which totalled $2178.00. Where mother supplied no evidence to establish the work done or the hourly rate charged for anything over and above the $2178.00, father argues, the award, to that extent, was excessive and a manifest abuse of discretion.

Mother's counsel testified to having inherited mother's case file with an outstanding fee balance of $2107.75. He also stated that he had no personal knowledge about what was done prior to October of 1991, that he was not associated with mother's previous counsel or his firm, and that upon review of time sheets it appeared that mother's previous counsel had approximately 18 hours in the case at $120.00 per hour. The time sheets were admitted in evidence over father's objection to the portions evidencing fees of the previous counsel.

■ A trial court is deemed an expert on the costs of attorney fees and has wide latitude in determining them. *Buckman v. Buckman*, 857 S.W.2d at 320[19–21]. As an expert, the court that tries the case may fix

attorney fees without the aid of evidence. *Id.*

The time sheets from which mother's counsel testified are not before us. The record does not reflect exactly when mother's counsel entered his appearance, or when previous counsel withdrew. It can be inferred, however, from mother's counsel's testimony that counsel took over mother's case around October of 1991. Mother's motion to modify was filed on March 30, 1990. The minutes of proceedings in the trial court, contained in the record on appeal, show that between the filing of mother's motion to modify and October of 1991, mother filed various requests for production of documents, responses to requests for production of documents, a statement of income and expenses, and a statement of property. The minutes also show that father made various filings, including a response to mother's motion to modify, a cross-motion to modify, requests for production of documents, objections to mother's request for documents, notice to take depositions, motion for sanctions, amended cross-motion to modify, motion to appoint a guardian ad litem, and a motion for an investigation and report concerning custodial arrangements. The minutes also show that there was a hearing held on father's motion for contempt and on his motion to compel. Thus, since the trial court had before it time sheets documenting the time spent by mother's previous counsel, and the record does not show the claimed number of hours to be unreasonable, we cannot say the trial court abused its discretion in its award of fees. Point denied.

■ In his fourth point, father contends the trial court erred in assessing all guardian ad litem fees against him because the evidence showed that the appointment of the guardian ad litem was necessitated by acts and omissions of mother, and that mother had sufficient independent income and assets and was capable of providing said fees on her own.

Section 452.423.1 authorizes the trial court to appoint a guardian ad litem where custody, visitation, or support of a child is a contested issue, and requires the court to appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged. Section 452.423.4 requires that the guardian ad litem be awarded a reasonable fee for services, and allows the trial court, in its discretion, to award such fees as a judgment to be paid by any party to the proceedings.

Here, father makes no contention that the amount of fees awarded to the guardian ad litem is excessive or otherwise unreasonable. He argues that the evidence shows mother had denied father his decretal visitation rights, and such denial justified father to seek a modification in custody which, in turn, necessitated appointment of a guardian ad litem.

However, father's motion alleged that mother had subjected Becky to physical, sexual and emotional abuse. Though father's allegations were ultimately deemed unsubstantiated in a report issued by the Division of Family Services, the trial court was required, under § 452.423.1, to appoint a guardian ad litem once the allegations of abuse were made. Thus, father's argument that the appointment of the guardian ad litem was necessitated by mother's refusal to honor father's visitation rights is not supported by the record.

Father's second argument against the trial court's assessment of guardian ad litem fees is that mother's annual income for 1990 and 1991 was such that she could bear her fair share of the guardian ad litem fees. Again, father's argument is premised on his assertion that mother's actual income was much greater than what she reported on her income and expense statement. As previously discussed, the evidence was sufficient for the trial court to find that mother's income was as she reported on her statement of income and expenses. Therefore, we find no abuse of discretion in the trial court's assessment of guardian ad litem fees. Point denied.

■ Father contends in his final point on appeal that the trial court erred in not granting his motion to modify temporary custody and visitation because mother acquiesced in her sworn testimony to such modifications. He argues that the wishes of the affected parties are properly considered in connection with requests for modifications of custody

and visitation, and that it was an abuse of discretion for the trial court to deny the requested modifications to which he claims the parties were in agreement, and which were unopposed by the guardian ad litem.

Where the custody of a child is at issue, the welfare of the child is the primary consideration. *Rumbolo v. Phelps,* 759 S.W.2d 894, 895[1] (Mo.App.1988). The parents' testimony regarding their preference as to custody arrangements is simply evidence for the consideration of the trial court. The trial court is not bound by any limitations of custody suggested by the parties. Its duty is to enter a judgment that is in the best interests of the child; the best interests of the parents are secondary. *Id.*

Unlike most litigation in which the judge is a neutral arbiter, the court in a custody proceeding has an affirmative duty to determine what is in the best interests of the child. *Id.* Thus, a greater burden is placed on the trial court than simply according the parties a fair trial. *Id.* We, therefore, presume that the decision reached was motivated by what the trial court believed was best for the child, and accord the trial court's determination greater deference than in the other cases. *Id.*

Here, the record reflects that investigations were done by Nancy Bristol, a social worker from Domestic Relations Division of the Juvenile Court, as well as Cindy Miller, a social service worker from the Division of Family Services. Both testified that after interviewing mother, father and Becky, and seeing Becky's living conditions at her mother's home, that there were no indications that Becky was being neglected or abused by either of her parents. Ms. Bristol testified that she spoke with Becky's teacher who stated that Becky came into kindergarten being well prepared academically, and that Becky was "an excellent student, a lovely child [with] straight A's [and] perfect work habits." Ms. Miller testified that while she was interviewing Becky she seemed very bright and relaxed with good verbal skills, and that she was very open in conversing. Ms. Miller testified that at the time of the investigation there was no evidence to support the allegations of abuse or neglect of Becky, and that there was nothing which led her to believe there was any problem with Becky's living conditions.

In short, there was substantial evidence to support a finding that under the custody and visitation terms of the dissolution decree, Becky is well cared for, doing well in school, and is an otherwise well adjusted child. Therefore, there is substantial evidence in the record for us to conclude that the trial court was acting in the best interests of Becky in maintaining the status quo and denying father's cross-motion to modify the custody and visitation provisions of the dissolution decree. Point denied.

Judgment affirmed.

PUDLOWSKI and KAROHL, JJ., concur.