**In re Marriage of Joyce C. PRICE, Respondent,**

v.

**Thomas E. PRICE, Appellant.**

**No. WD 51379.**

Missouri Court of Appeals,
Western District.

May 14, 1996.

Edward Frederick Ford, III, Kansas City, for Appellant.

Lauri J. Laughland, Kansas City, for Respondent.

Before SPINDEN, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Thomas E. Price, appellant, appeals from a decree of dissolution of marriage. He raises two points on appeal. In Point I, appellant contends in four sub-points that: (A) the trial court erred in awarding $300 in monthly maintenance to Joyce C. Price, respondent, because appellant lacks the ability to pay the award and still meet his minimum needs; (B) the trial court erred in its award of child support in that its Form 14 calculation incorrectly included child care expenses and overstated his gross monthly income and failed to take into consideration his ability to pay; (C) there was no substantial evidence to support the trial court's ordering $1,800 in retroactive child support; and (D) the trial court abused its discretion by decreeing that debts allocated to appellant shall be nondischargeable in bankruptcy. In Point II, appellant claims that the trial court erred in failing to hold a hearing to determine his 1994 tax obligations and the value of his personal savings plan.

We affirm in part and reverse and remand in part.

## FACTS

The parties were married on May 1, 1981. On June 4, 1983, Jason T. Price was born and Justin L. Price was born on February 5, 1986. Respondent filed for divorce on May 3, 1994, and trial was held in December 1994. The trial court entered its decree of dissolution on May 31, 1995. They were awarded joint legal custody of their children and respondent received primary physical custody subject to appellant's visitation rights.

Items of marital property not in dispute on appeal were distributed in the following manner. Respondent was awarded the family residence (valued at $75,000 with $10,161 in equity), title to a 1988 pickup truck (valued at $2,875), title to a checking account at First Federal with a balance of $100 and miscellaneous items of marital property. Respondent also received thirty seven and one-half percent of appellant's retirement annuity pursuant to a qualified domestic relations order (QDRO). Appellant received title to a 1993 Chevrolet Cavalier (valued at $15,975 with approximately $5,000 in equity), title to a checking account at United Missouri Bank with a balance of $69 and miscellaneous items of marital property, including approximately $10,500 from a previous worker's compensation settlement.

Both parties are employed. Appellant is employed by General Motors and is a member of the UAW. He normally works 40 hours per week and earns a base hourly rate of $18.76. His normal work schedule is disrupted by periodic lay-offs, but he also receives a substantial amount of overtime work for which he is paid time and a half. Respondent obtained a two-year associate's degree prior to the marriage and is now working towards a bachelor's degree in education at the University of Missouri–Kansas City. She anticipates it will take her three and a half years to complete her education. In order to pay her tuition, books and some living expenses, she has received a one-time Pell grant of $862 and a Stafford loan of $5,500. While pursuing her degree, she plans to work 24 hours per week at Proctor

& Gamble where she earns an hourly rate of $10.50.

## STANDARD OF REVIEW

■■■ This being a court-tried case, the trial court's decree must be affirmed on appeal unless there is no substantial evidence to support the decision, it is against the weight of the evidence, or it erroneously applies the law. *Mehra v. Mehra,* 819 S.W.2d 351, 353 (Mo. banc 1991); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Additionally, we defer to the trial court's determination of credibility, viewing the evidence and inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences. *Mehra,* 819 S.W.2d at 353. "[A] trial court is free to believe or disbelieve all, part, or none of the testimony of any witness." *Burkhart v. Burkhart,* 876 S.W.2d 675, 678 (Mo.App. 1994).

### I.

Because appellant raises the issue of his ability to pay child support and maintenance, we begin by examining the financial circumstances of the parties. Through November 27, 1994, appellant's gross income from GM was $30,479. In addition to this sum, appellant also earned $6,000 from sub-pay and unemployment benefits for a year-to-date total of $36,479.[1] Appellant estimates his monthly expenses to be $3,629. Although appellant's Form 14 calculations show a gross monthly income of $3,251, his actual gross monthly earnings were $3,316 through the first eleven months of 1994. The trial court, however, elected to accept respondent's Form 14 amount, which shows appellant's gross monthly income to be $3,600.[2] This amount is the average of appellant's gross monthly income for the years 1992, 1993 and 1994.

Besides awarding appellant the items of marital property noted above, the trial court also ordered him to assume the following marital debts: Bank IV loan of $1,301; one-half of Visa balance, or $2,500; GMAC loan of $11,000; personal savings plan loans of $2,249; Discover balance of $2,371; 1994 personal property tax on the parties' vehicles; and respondent's attorney's fees of $1,000. In its decree, the trial court declared those debts to be nondischargeable in bankruptcy.

Respondent earns a gross monthly income of $1,092 and estimates her monthly expenses to be $3,500. In addition to awarding respondent the items of marital property set out above, the trial court also ordered respondent to assume the following marital debts: $1,500 Colorado Prime balance; one-half of the Visa balance, or approximately $2,500; $5,500 Stafford loan balance; and $66,249 remaining to be paid on the mortgage.

■■■ In his brief, appellant cites testimony given by respondent that during some months he has a net income of only $1,788.[3] Appellant uses this low monthly figure, which presumably occurs during a periodic lay-off, to argue that he cannot meet the court ordered monthly obligations of $1,541 [4] and still

---

1. Appellant also receives approximately $200 per month from a previous worker's compensation settlement. The $10,500 remaining to be paid to appellant, however, was set aside to him as part of the trial court's property division.

2. The trial court incorrectly indicated the average of appellant's gross monthly income from 1991, 1992 and 1993 was $3,600. The $3,600 was the average of years 1992, 1993, and 1994.

3. This net monthly income amount does include the following paycheck deductions: $200 for personal savings plan; $108 for savings bonds for the children; $377 for GMAC auto loan; and $120 for loans made against appellant's personal savings plan.

4. Appellant calculated the amount of court ordered monthly obligations to be $1,690, which was derived from the following list of obligations:

| | |
|---|---|
| $782 | child support |
| $300 (two years) | maintenance |
| $149 ($1,800 total) | retroactive child support |
| $234 ($1,301 balance) | Bank IV consolidation loan |
| $125 ($4,871 balance) | Visa/Discover cards |
| $100 (estimate) | Respondent's attorney's fees |

have enough remaining to meet his own reasonable living expenses.

Assuming for the moment that appellant's net income amount is correct, he would have $247 after paying his court ordered obligations with which to pay his living expenses. However, the trial court did not accept appellant's net monthly income amount because low monthly earnings must be averaged with high monthly earnings. Given the nature of appellant's work, it is likely that during some months he will have a net income that is considerably more than $1,788 that will allow him to pay maintenance and child support as ordered. We cannot find from the record that the trial court abused its discretion in income averaging to ascertain appellant's gross monthly income of $3,600. *Goodwin v. Goodwin,* 746 S.W.2d 124, 126 (Mo.App. 1988).

## A. MAINTENANCE

■ The trial court ordered appellant to pay $300 in monthly maintenance to respondent for a two-year period running from June 1995 to June 1997. Appellant argues that the award of maintenance was erroneous because compliance will prevent him from meeting his own reasonable needs. We disagree.

■ It is clear that the trial court has broad discretion in determining the amount and duration of maintenance. *Hicks v. Hicks,* 859 S.W.2d 842, 846 (Mo.App.1993). Appellate review is limited to determining whether the trial court abused its discretion. *Id.* at 846–47. Maintenance should not be disturbed on appeal unless it is " 'wholly beyond the means of the spouse who pays maintenance.' " *Theilen v. Theilen,* 847 S.W.2d 116, 123 (Mo.App.1992) (citation omitted).

■ Section 452.335.1, RSMo 1994, establishes a two step test for maintenance awards. First, the trial court must find that the party seeking maintenance lacks sufficient property, including marital property apportioned during the dissolution proceeding, to provide for his or her reasonable needs. *Hicks,* 859 S.W.2d at 846. Second, if the party seeking maintenance lacks sufficient

property to meet his or her needs, the court then must determine whether the party's reasonable needs can be met through appropriate employment. *Id.* An important function of maintenance is that it should promote self-sufficiency by encouraging the recipient spouse to obtain any necessary education or training. *Doerflinger v. Doerflinger,* 646 S.W.2d 798, 800 (Mo. banc 1983). It is well settled that in determining the need for maintenance, a party need not expend marital property received in a dissolution proceeding to maintain an acceptable standard of living. *Hicks,* 859 S.W.2d at 846.

■ The record supports the fact that respondent lacks sufficient income and property to provide for her reasonable needs. The record further reflects that it is unlikely that respondent could meet her reasonable needs through appropriate employment. She is now working part-time, but even a full-time job at her current rate of pay would not significantly improve her ability to meet her reasonable needs. By returning to school, respondent is making constructive efforts to enhance her income potential. Such efforts should be encouraged in cases like this by providing temporary maintenance.

Once the trial court determines that a maintenance award is necessary in a given case, it must then set the amount and duration of maintenance after considering all the relevant factors found in § 452.335.2, one such factor being the ability of the spouse to pay maintenance. The § 452.335.2 factors are as follows:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently . . .;

(2) The time necessary to acquire sufficient education or training . . .;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

In reviewing the record, taking into consideration the § 452.335.2 factors and using the gross monthly income figure of $3,600 per month for appellant, we find no abuse of discretion in awarding maintenance to respondent in the amount of $300 per month. Sub-point A. is denied.

## B. CHILD SUPPORT

The trial court ordered appellant to pay $782 in monthly child support. Appellant claims that the trial court erred in establishing child support pursuant to a Form 14 calculation which incorrectly included child care expenses and overstated his income and that the trial court did not consider his ability to pay in establishing child support. We disagree.

An award of child support is within the sound discretion of the trial court. *McMickle v. McMickle,* 862 S.W.2d 477, 484 (Mo.App.1993). "We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion, and we will not disturb an award of child support unless the evidence is 'palpably insufficient' to support it." *Holmes v. Holmes,* 878 S.W.2d 906, 909 (Mo.App.1994).

Rule 88.01 and § 452.340.1, RSMo 1994, together establish the procedure for determining child support. First, the trial court must calculate the presumed correct child support amount by using Civil Procedure Form 14. *Woolridge v. Woolridge,* 915 S.W.2d 372, 378 (Mo.App.1996). Unless rebutted, it is presumed that the amount of child support derived from Form 14 is the amount to be awarded. Rule 88.01; § 452.340.8. Second, the trial court must decide whether to rebut the Form 14 amount as being unjust or inappropriate after consideration of all relevant factors. Rule 88.01; *Woolridge,* 915 S.W.2d at 379. The rebuttal factor critical in this case includes the "financial resources and needs of the parents." § 452.340.1(2). The party seeking to rebut the Form 14 amount carries the burden to show that it is unjust or inappropriate. Rule 88.01; *Wenger v. Wenger,* 876 S.W.2d 735, 740 (Mo.App.1994).

Form 14 specifically provides that the custodial parent's reasonable work-related child care costs should be included on Line 4(b). *In re Marriage of Julian,* 868 S.W.2d 182, 186 (Mo.App.1994). Even though no child care costs were incurred during the marriage, we find the inclusion of $75 in monthly child care costs in the Form 14 calculations was supported by the record.

Q: [By Ms. Bass, attorney for respondent]: Now, I notice that you also have some custodial parent reasonable work-related child care costs of $75 per month. And is that based upon whether—if you need child care for the summer months only?

A: [By respondent]: Yes.

Q: Based upon your present schedule, you don't have a need for child care during the school year. Is that correct?

A: Right.

Q: And should your husband have to work during the summer—many times he's laid off during the summer. But if he is not laid off during the summer, he would not be available to care for your children.

A: Yes.

Q: And that is why you're working in the three month child care for the summer and amortizing that over a 12-month period?

A: Yes.

By accepting respondent's Form 14 calculations, the trial court found appellant's gross monthly income to be $3,600. This amount was derived by averaging his gross monthly income from 1992, 1993 and 1994. A trial court may properly consider "[p]ast, present and anticipated earning capacity" in determining a husband's ability to pay maintenance and a noncustodial parent to pay child support. *Goodwin,* 746 S.W.2d at 126.

We find substantial evidence in the record to support the Form 14 calculations used by the trial court. Given our analysis of appellant's ability to pay, *supra*, we find that he is capable of complying with trial court's child support order and still meet his own reasonable living expenses. Sub-point B. is denied.

## C. CHILD SUPPORT ARREARAGE

Appellant argues that there was no substantial evidence to support the trial court's order of $1,800 in child support arrearages. We agree.

■ Section 452.340.1 provides that a trial court has authority to award retroactive child support. It is within the trial court's discretion to make the child support award retroactive. *Wenger*, 876 S.W.2d at 740. In this case, the trial court issued its decree of dissolution on May 31, 1995, and ordered appellant to pay retroactive child support in the amount of $782 per month commencing February 1, 1995. It was further ordered:

> That [appellant] is hereby notified that income withholding shall be initiated to become effective on June 1, 1995. [Appellant's] wages or other income shall be withheld in an amount equal to the current month's child support obligation of [appellant] of $782 per month (regular child support) and $34.61 per week arrearages on arrearages of $1,800. The arrearage payment of $34.61 per week shall commence the week of June 1, 1995, and continue until said $1,800 is paid in full.

■ The $1,800 child support arrearage amount deviates from the $782 per month ordered for five months which would total $3,910.[5] The record is devoid of any findings by the trial court indicating how it reduced the total arrearage amount of $3,910 to $1,800. Appellant contends he is entitled to be given credit for the $726 monthly mortgage payments he made pursuant to an Order of Protection issued on July 14, 1994. The Order provided that appellant was to pay the mortgage payments in lieu of child

support during the pendency of the marriage dissolution. The record indicates that the trial court was aware of the Order and how it related to the retroactivity of child support. This might account for the $1,800 arrearage. However, it is unclear from the record whether credit was given and, if so, in what amount. Therefore, given that the arrearage amount in this case deviates from the presumed child support amount, it is incumbent upon the trial court to provide a record of its arrearage calculations, otherwise meaningful appellate review is impossible. *See Woolridge*, 915 S.W.2d at 381–82. We reverse and remand the trial court's order as to the child support arrearage amount for additional findings consistent with this opinion.

## D. DISCHARGEABILITY OF DEBTS IN BANKRUPTCY

Appellant next argues the trial court abused its discretion by decreeing that marital debts and attorney's fees allocated to him shall be nondischargeable in bankruptcy.

■ Section 523(a)(5) of the United States Bankruptcy Code (Code) governs whether a debt is dischargeable. 11 U.S.C. § 523(a)(5) (1994). Specifically, the Code provides that alimony, maintenance or support obligations owing to a spouse, former spouse or child are nondischargeable. 11 U.S.C. § 523(a)(5); *In re Williams*, 703 F.2d 1055, 1056 (8th Cir.1983). "Whether a particular debt is a support obligation or part of a property settlement is a question of federal bankruptcy law, not state law." *In re Williams*, 703 F.2d at 1056. A state court's characterization of an award as support or as part of a property settlement is not binding on a bankruptcy court. *In re Smith*, 152 B.R. 604, 606 (Bankr.W.D.Mo.1993); *Callis v. Bryce*, 872 S.W.2d 539, 542 (Mo.App.1994).

■ The trial court's decree as to dischargeability has no ultimate effect. It is significant only in determining whether the court intended the awards to function as

---

5. In his brief, appellant states that when he received the dissolution decree in June of 1995, the child support trustee considered him five months or $3,610 in arrears. Actually, $3,910 is the correct figure ($782 times five), but it is unclear from the record who is responsible for the miscalculation.

support.[6] *In re Williams,* 703 F.2d at 1057; *In re Burns,* 149 B.R. 578, 581 (Bankr. E.D.Mo.1993). The final determination, however, clearly rests with the bankruptcy court. Thus, because the marriage dissolution laws of Missouri do not require the trial court to proclaim the dischargeability of marital debts and the trial court's judgment in that respect has no effect, there is no reviewable issue for this court.

## II.

■ In appellant's second Point, he argues the trial court erred in failing to reopen the hearing to determine his tax obligations on the $6,000 he received in sub-pay and unemployment benefits in 1994 and the valuation of his personal savings plan. Appellant claims that the court offered to reopen the hearing to receive additional evidence on these issues and that he requested such a hearing, but the court issued its decree without honoring his request. Appellant further contends that his 1994 tax liability and the valuation of his personal savings plan are analogous to the issue of timeliness in *In re Marriage of Gustin,* 861 S.W.2d 639 (Mo. App.1993).

We find *Gustin* does not apply to the issue of tax liability in this case. Unlike the volatility of stock prices discussed in *Gustin,* 861 S.W.2d at 643–44, appellant's tax liability on the $6,000, assuming no penalties are incurred, will remain fixed.

Although subject to federal taxation, the $6,000 in question was not taxed when received by appellant. At trial, appellant's counsel attempted to ascertain appellant's estimated tax liability. Respondent objected to such testimony on the grounds that it was not listed as a current debt. Even though the trial judge stated he was inclined to sustain the objection, he took the matter under advisement. In doing so he allowed both parties to submit additional evidence in the form of post-trial suggestions. The decree of dissolution did not specifically mention appellant's 1994 tax liability.

At trial, appellant offered to prepare his 1994 tax return and enter it as an exhibit for the court to consider under advisement. There is nothing in the record which suggests that the tax return was ever submitted to the court. Because the trial court was not required to issue findings on this issue, we can infer that the court considered the evidence presented in the post-trial suggestions on this issue when issuing its decree. All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached. Rule 73.01(a)(3); *In re Matter of Hancock,* 828 S.W.2d 707, 708 (Mo.App.1992). We conclude that the trial court did not err by not reopening the hearing on the issue of tax liability.

■ Appellant next argues that *Gustin* requires a hearing to determine the current value of his personal savings plan because of the five-month interval between the issuance of the decree on May 31, 1995, and the trial held on December 7 and 9, 1994. We agree.

In *Gustin,* this court harmonized the holding of *Taylor v. Taylor,* 736 S.W.2d 388, 391 (Mo. banc 1987), in which the Supreme Court determined that the date of valuation of marital property is the date of trial, with § 452.330.1(1), RSMo 1994, which mandates that the trial court must consider the economic circumstances of each spouse at the time the division of property is to become effective. *Gustin,* 861 S.W.2d at 643–44. In cases where the effective date of the distribution is not reasonably proximate to the date of valuation, another hearing should be held. *Id.* at 644.

Seeking the most current value of the plan, respondent requested the court to take this issue under advisement. The trial court did so and accepted post-trial suggestions from both parties. The trial court subsequently found that appellant's personal savings plan was funded by his shares of GM stock. The plan had a balance of $12,429 as of December 31, 1993. In 1994, appellant's combined

---

**6.** Aside from the crucial factor of the state trial court's intent, other factors are also relevant to the bankruptcy court's determination, including each party's economic circumstances and finan-

cial need. Nancy C. Holliday, Effect of Bankruptcy on Domestic Attorney's Fees, 48 J. Mo. Bar 421, 426 (1992).

monthly contributions of $2,141.97 brought the plan's value up to $14,570.97. After subtracting $2,249 in loans made against the plan, the trial court found that the plan had a value of $12,321.97 at the time of trial. The court allocated GM stock worth $6,200 to respondent pursuant to a QDRO. Based on information received from GM, appellant claims that the plan's value as of January 1995, was $10,301 due to a decrease in the value of GM stock. Appellant's claimed value also includes his 1994 contributions to the plan.

Even though the trial court added appellant's 1994 contributions and subtracted the loans made against the plan to the 1993 balance, its valuation of the plan does not comport with *Gustin* since there is no evidence suggesting an attempt was made to determine whether the price of the GM stock funding the plan had changed before trial. It is unclear from the record why the plan's 1994 balance was not available at the time of trial. Nevertheless, because the trial court failed to account for potential changes in the value of the GM stock, we reverse the trial court's division of the personal savings plan. On remand the court shall receive additional evidence as necessary to allow it to determine the current value of the plan.

## CONCLUSION

The trial court's judgment awarding maintenance and child support is affirmed. The trial court's judgment as to the retroactive child support is reversed and remanded with the trial court to make necessary findings consistent with this opinion supporting its award. The trial court's judgment as to appellant's personal savings plan is reversed and remanded and enter its order valuing and dividing the plan.

All concur.